N. R. FAIRBANKS COMPANY v. CITY OF BLAINE.

242 N. W. 2d 99.

May 7, 1976—No. 45620.

*Douglass, Bell, Donlin, Shultz & Sweeney* and *Thomas M. Sweeney,* for appellant.

*Gray, Plant, Mooty & Anderson* and *Michael R. Cunningham,* for respondent.

Heard before Peterson, Yetka, and Breunig, JJ., and considered and decided by the court en banc.

316

PETERSON, JUSTICE.

This is an appeal from a judgment of the Anoka County District Court determining that the denial of an application for a special-use permit was arbitrary, unreasonable, and unlawful and directing the Blaine City Council to issue the requested special-use permit.

On May 3, 1973, the Blaine City Council denied plaintiff's application for a special-use permit to construct a Goodyear Tire & Rubber Company store in the city of Blaine because the B-2 "Neighborhood Business" zoning of the land that was the subject of the application did not permit such a use. On this appeal defendant argues its action was reasonable: (1) because plaintiff's proposed use is not expressly included in the list of specific uses permitted in a B-2 "Neighborhood Business" zone and (2) because plaintiff's proposed use is intended to serve the general public and not merely the needs of a local neighborhood and thus belongs in a B-3 "General Business" zone, not a B-2 zone. We disagree and accordingly affirm.

On January 31, 1973, plaintiff applied to defendant for a special-use permit to construct a retail store and automotive service facility on the subject property. Plaintiff intended to construct a store divided into three areas: service, storage, and sales. Plaintiff's site plan indicated seven overhead hydraulic hoists and nine full-sized overhead doors in the auto service area. Plaintiff described the types of services to be provided by the store as "the mounting of tires, the installation of accessories, auto accessories such as points, spark plugs, batteries, products of that nature. No gasoline." No automotive body or painting work, major overhauls, or transmission work would be performed. Plaintiff acknowledged that the proposed use would serve residents of the locality and also a larger segment of population than the average neighborhood. Plaintiff informed defendant that the proposed use was not a service station but was, rather, an automobile service establishment with retail sales of products

such as lawn mowers and garden supplies, sporting goods, hardware, appliances, tires, and auto accessories.

Plaintiff's request for a special-use permit was referred to defendant's planning commission. The planning commission considered and reviewed plaintiff's request on three separate occasions, culminating in a meeting on April 10, 1973, at which defendant's planning commission unanimously approved plaintiff's special-use permit application.

Subsequently, plaintiff was advised by the city attorney for the city of Blaine that the proposed use was a use permitted by a special-use permit in a B-3 "General Business" zone, and was not a permitted use in a B-2 "Neighborhood Business" zone. Plaintiff was accordingly advised that a rezoning to B-3 would be required for his proposed use. On April 19, 1973, at a regular council meeting, plaintiff's request for a special-use permit was tabled by the Blaine City Council until the zoning was proper. Plaintiff did not request a rezoning from B-2 "Neighborhood Business" to B-3 "General Business." On May 3, 1973, plaintiff's application for a special-use permit in a B-2 zone was denied by the Blaine City Council on the grounds that plaintiff's proposed use "is not a permitted use in the present zoning."

Plaintiff contends, and the trial court found, that the proposed store and automotive service facility constituted a permissible use in an area zoned B-2 and that the denial of the special-use permit by the Blaine City Council was arbitrary and unreasonable. Defendant argues that the denial of the special-use permit was reasonable because the proposed use was not specifically included on the list of permitted uses in a B-2 zone enumerated in the Blaine zoning code. Sections 31.03(d) and 31.03(e) of that code, however, make retail businesses which sell china, floor covering, hardware, household appliances, radios, television sets, paint, and sporting goods permissible in a B-2 zone. Sections 34.14(a) and 34.14(j) make establishments selling new automobiles and service stations permissible in a B-2 zone under special-use permits. If both plaintiff's retail sales operation and his

automotive services operation are individually permissible in a B-2 zone, we conclude that the combination of these uses must also be found permissible, absent a showing by the city that the hybrid use is in some way injurious to the health, safety, or welfare of the neighboring landowners or the community at large. Here the city offered no evidence of any potentially adverse effects on either the contiguous property uses or the general community from the proposed use; no local citizen at any time objected to the proposed use. The trial court could properly rule, in these circumstances, that it is unreasonable for the city to deny the special-use permit application merely because the proposed hybrid use is not explicitly enumerated as permissible in a B-2 zone.

Defendant's second articulated reason for denying the permit application is that the proposed use is intended to serve a larger segment of the population than the average neighborhood and thus, while permissible in a B-3 "General Business" zone, is an impermissible use in a B-2 "Neighborhood Business" zone. Section 31.04 of the Blaine zoning code provides:

"A general business district, as distinguished from a neighborhood business district, contains uses which include the sale of commodities or performance of services for a larger segment of population than the average neighborhood."

Whether this distinction justifies defendant's action is a close question which requires careful consideration.

In Zylka v. City of Crystal, 283 Minn. 192, 196, 167 N. W. 2d 45, 49 (1969), we discussed the role of special-use permits in providing municipalities "with broad latitude to meet the changing problems of land-use control." We held in Zylka, however, that the denial of a special-use permit is arbitrary when "the evidence presented at the hearing before the municipal governing body and the reviewing court establishes that the requested use is compatible with the basic use authorized within the particular zone and does not endanger the public health or safety or the general

welfare of the area affected or the community as a whole." Applying the two-pronged Zylka test to this case, it would appear at first blush that the denial of this special-use permit was reasonable because, while the general welfare of the contiguous area and the community is not adversely affected by the proposed use, the requested use is not compatible with other uses in a B-2 zone because it is a general and not a neighborhood business. We reject this conclusion, however, because we are persuaded that in the special circumstances of this case the city acted unreasonably in failing to rezone this property from B-2 to B-3.

Section 31.02 of the Blaine zoning code in pertinent part defines a B-2 "Neighborhood Business" zone "as a business district adjacent to or surrounded on at least three (3) sides by residence district * * *." The subject property in this case is a 1 1/2-acre piece of undeveloped land located on the northeasterly corner of the intersection of United States Highway No. 10 and Jefferson Street in Blaine. The land surrounding this property is zoned B-2 to the east and south, B-3 to the west, and residential single-family dwelling to the north. It is manifest, therefore, that the B-2 zoning on this property does not conform to the defined standards of defendant's own zoning code. While defendant city has broad latitude in the development of land-use policies within its borders, it may not establish standards for zoning classifications and then, by ignoring those standards, deny a requested use as improper under existing zoning when no adverse effect upon the community due to the proposed use has been alleged or proven.

Section 36.08(2) of defendant's zoning code provides that the city council or the planning commission may initiate a rezoning. Here, defendant's city manager advised plaintiff to submit a special-use permit under the existing zoning, the planning commission gave unanimous approval to plaintiff's proposed use, and defendant's city attorney initially advised plaintiff that the proposed use was allowable in a B-2 zone. It was not until the permit proceedings were well advanced that defendant's city at-

torney changed his mind and declared that the proposed use was inconsistent with the existing B-2 zoning. While it is ordinarily the duty of the petitioning party to seek a rezoning and the failure to do so constitutes a failure to exhaust administrative remedies, we are convinced that this doctrine is not controlling here because requiring plaintiff to seek a rezoning "would serve no useful purpose under the circumstances of [this] case." Minn. St. 462.361, subd. 2. In misleading plaintiff as to the proper procedure required for seeking approval of its proposed use and in failing to correct on its own motion the manifest miszoning of this property, defendant has acted in an arbitrary and unreasonable manner, which indicates to us that a petition for rezoning would have been an exercise in futility by plaintiff. In the unusual circumstances of this case, therefore, we find that the doctrine of the exhaustion of administrative remedies does not bar consideration of plaintiff's claim.

Affirmed.