Dorothy J. LOHMAN and Vernon P. Lohman, Petitioners and Respondents,

v.

CITY OF ABERDEEN, a Municipal Corporation, et al., Respondents and Appellants.

No. 11607.

Supreme Court of South Dakota.

Nov. 12, 1976.

C. W. Hyde of Hyde, Preszler & Foreman, Aberdeen, for petitioners and respondents.

Charles B. Kornmann of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for respondents and appellants.

WOLLMAN, Justice.

Petitioners commenced mandamus proceedings to compel respondents to approve certain plats of land adjoining the city of Aberdeen. The trial court granted the writ, and respondents appeal. We reverse.[1]

The matter was tried on seven different days over a period of four months. The record includes a bewildering number of plots and plot plans, sketches, drawings, maps, copies of maps, plats, preliminary plats, resolutions, and the like, some of which exhibits appear to be either duplicative or irrelevant.

1. Respondents raised numerous claims of error regarding the manner in which the alternative writ was issued and served, but in view of our disposition of the case we do not treat these claims.

Petitioner Dorothy J. Lohman owns a quarter section of land (the land) southeast of the city of Aberdeen (the city). The quarter section lies immediately adjacent to the southeast portion of the municipal airport. In June of 1967 Mrs. Lohman conveyed to the city a clear zone avigation easement over the southwest quarter of the land. In 1969 she sold a .77 acre tract in the southwest corner of the land to the city for the instrument landing system on the northwest-southeast runway at the airport.

In late 1969 Mrs. Lohman and her husband, petitioner Vernon P. Lohman, undertook to have the land platted for the purpose of developing it as a residential subdivision. In August of 1970 the Aberdeen city planning commission and the city commission approved a plat of a portion of the land denominated as outlots 1 through 8, Jobee Acres. A plat of outlots 9 through 25 of Jobee Acres was approved in January of 1973.

On June 20, 1973, Milbert Mehlhoff, a local real estate broker acting on behalf of petitioners, presented to a joint meeting of the city planning commission and the Brown County planning commission (the land is outside of but within three miles of the corporate limits of the city and thus joint action of these two commissions was required. SDCL 11–6–12) a plat of outlots 26 through 62 of Jobee Acres. This plat was approved by the joint commissions, " * * * subject to displaying all easements set forth in the restrictive covenants as well as mandatory setback lines." [2]

To comply with the conditions imposed by the joint planning commission, petitioners had the setback and easement lines drawn on the plat by their engineering consultants. On July 17, 1973, Mr. Mehlhoff

presented the plat of outlots 26 through 62 to the city commission. The minutes of the commission meeting of July 17, 1973, state that "[A]pproval of the final plat of Jobee Acres was continued for Owners Certificate to provide for dedication of streets and to show access roads on the plat * * *."

After making the requested changes, petitioners again presented the plat to the city commission on July 24, 1973, at which time the airport manager informed the commission that because the property line of the proposed plat adjoined the southeast approach zone at the airport, approval of the plat would not allow for future expansion of the airport to the south, the only direction available for expansion. The commission apparently took no action on the plat other than to recommend that petitioners meet with the airport board to discuss the problem raised by the airport manager. In accordance with this recommendation, Mr. Lohman and Mr. Mehlhoff met with the members of the airport board the following week at which time the members of the board drew a diagonal line across the plat, cutting it approximately in half, to indicate the area within which the board thought residential development should not be permitted. Apparently in response to a suggestion by the city commission, petitioners prepared a new plat covering outlots 26, 27, 28, 29, 33 to 36, and 46 of Jobee Acres and presented it to the city commission for approval on August 7, 1973. This plat was approved on that date and was later filed in the office of the register of deeds.

Further negotiations continued between petitioners and the members of the airport board into December of 1973. These negotiations proved unsuccessful, however, and on March 5, 1974, petitioners' attorney appeared before the city commission and de-

**2.** Respondents contend that the so-called "plat" in reality was nothing more than a map of the area in question inasmuch as the record does not reveal that the approval of the respective planning commissions was endorsed in writing on the plat as required by section 703.2 of Ordinance 1159 (the city's subdivision regulations), nor does the record establish that a certificate was attached to the plat showing the action of the city planning commission as required by section 704 of Ordinance 1159. Respondents point to other instances in which petitioners failed to comply with the requirements of Ordinance 1159. As with respondents' attack upon the regularity of the issuance of the writ of mandamus, however, we do not pass upon these alleged irregularities because we base our holding upon other grounds.

manded that the commission approve a plat of outlots 26 through 62, and a plat of outlots 30, 31, 32, 37 to 45, and 47 to 62, the latter representing the outlots remaining unapproved following the approval by the city commission of the plat of outlots 26, 27, 28, 29, 33 to 36, and 46 on August 7, 1973. The commission refused to approve these plats, citing, among other reasons, the fact that petitioners had failed to comply with the subdivision regulations concerning the submission of the plats. Petitioners thereupon commenced these mandamus proceedings against the commissioners, alleging that because the commission had failed to approve or disapprove the plat of outlots 26 through 62 within 60 days after its submission the plat was deemed approved under the provisions of SDCL 11–6–32, which, at all times material to this action, provided that:

"The plat shall be approved or disapproved within sixty days after submission thereof; otherwise such plat shall be deemed to have been approved and a certificate to that effect shall be issued by the council on demand; provided, however, that the applicant for the approval may waive this requirement and consent to the extension of such period. The ground of disapproval of any plat shall be stated upon the records of the council." [3]

Alternatively, petitioners contended that once the city planning commission had approved the plat the city commission had no discretion to disapprove it but was limited to administratively approving the plat.

In holding that the writ should issue, the trial court found that the plat had remained on file for several months after July 24, 1973, and concluded that the commission had an absolute duty to approve the plat since the commission had failed to disapprove it within 60 days after it was submitted. Moreover, the trial court held that the city commission had no discretion with respect to approving the plat once it had been approved by the city and county planning commissions and that, in so many words, the city commission "was acting in a 'rubber-stamp' posture which should have affirmed all Plan Commission allowances." The writ directed the city commissioners to approve both the original plat of outlots 26 through 62 and the subsequent plat covering outlots 30, 31, 32, 37 to 45, and 47 to 62.

■ Although mandamus will lie to compel officials to perform ministerial duties or to compel them to exercise their judgment and discretion, *Breckweg v. Knochenmus*, 81 S.D. 244, 133 N.W.2d 860; *Tubbs v. Linn*, 75 S.D. 566, 70 N.W.2d 372, before such writ can properly issue the officials against whom the writ is sought must have the power to perform the act desired, they must be under a clear legal duty to perform such act, and the person seeking the writ must have a clear legal right to the performance of the act sought to be compelled. *State ex rel. Caldwell v. Skinner*, 59 S.D. 68, 238 N.W. 149. Moreover, a court is without jurisdiction to compel officials to perform an act in open violation of an existing statute. *Wilmarth v. Ritschlag*, 9 S.D. 172, 68 N.W. 312.

■ Petitioners' case founders on each test. Although the trial court found that the plat of outlots 26 through 62 had remained on file for several months after July 24, 1973, we conclude that this finding is clearly erroneous in view of the admission by Mr. Lohman that he had taken the plat from the city commission following the July 24, 1973, meeting, the testimony of one of the city commissioners that the plat had been withdrawn after that meeting, and the testimony of the city auditor that there was no plat of outlots 26 through 62 on file in her office. Once the plat was withdrawn, there was no duty on the part of the city commission to do anything, and therefore the provisions of SDCL 11–6–32 did not inure to petitioners' benefit. Moreover, because this plat was withdrawn by petitioners and a plat of only nine lots substituted therefor, the city commission could not have approved the original plat after August 7, 1973, since that plat was no longer before it

---

3. Chapter 116, Laws of 1975, changed the time to 90 days.

and in any event could not have been approved in its original form inasmuch as nine of the lots included in the original plat had been separately platted and approved on August 7, 1973.

█ Likewise, it is clear that the plat of outlots 30, 31, 32, 37 to 45, and 47 to 62 was never presented to the city planning commission and the Brown County planning commission prior to being submitted to the city commission on March 5, 1974. Consequently, the city commission could not legally have approved this plat in the absence of the prior approval of those planning commissions in view of section 402 of Ordinance 1159 and SDCL 11–6–12 and 11–6–26, which require such prior approval.[4] Thus the trial court erred in ordering the city commission to approve this plat.

█ We also disagree with the trial court's holding that the city commission had no discretion to approve or disapprove the plat once it had been approved by the city and county planning commissions. SDCL 11–6–26 (amended in 1975 in a manner not material to this action) provides that once a municipality has adopted a comprehensive plan no plat of a subdivision of land lying within the municipality or within three miles of its corporate limits shall be filed or recorded until it has been submitted to and a report and recommendation has been made by the planning and zoning commission to the city council and the council has approved a plat. This statute provides in part that " * * * [S]uch plats shall, after report and recommendations of the commission are made and filed, be approved or disapproved by the city council. * * * "

Section 703.3 of Ordinance 1159 provides that:

"The approval of the final plat by the [City Planning] Commission is revocable

and does not constitute final approval or acceptance of the subdivision by the City Council."

We think that it was clearly within the power of the city to limit the approval of a final plat by the city planning commission to the status of a recommendation only, in view of the above quoted language of SDCL 11–6–26. City and county planning commissions are composed of citizens who serve on such commissions as part of their civic duty. They perform a valuable service to their communities by carefully comparing proposed plats against comprehensive plans and subdivision regulations after the Edenic qualities of the areas to be platted have been extolled by the developers thereof. Essential and valuable as the recommendations of the planning commission members may be, however, we cannot believe that the legislature intended that the governing body of a municipality should be relegated to the role of ministerially approving all plats that have been found by the planning commission to be in compliance with the local comprehensive plan and subdivision regulations. It is our opinion that the governing body of a municipality has an independent, nondelegable duty to exercise its considered judgment whether to approve or disapprove a proposed plat. This discretionary authority is, of course, not unfettered, as respondents concede, and where refusal to approve a plat is withheld arbitrarily and capriciously, or is based upon invalid grounds or grounds not warranted by law, the governing body may be compelled to approve the plat by mandamus. Cf. *Breckweg v. Knochenmus*, supra; *N. R. Fairbanks Co. v. City of Blaine*, (Minn.) 242 N.W.2d 99. Although petitioners contend that the refusal of the city commission to approve the plats in question

---

4. Section 402 of Ordinance 1159 reads as follows:

"From and after the time when the Planning Commission shall have adopted a comprehensive plan which includes at least a major street plan or shall have progressed in its comprehensive planning to the stage of making and adopting a major street plan, and shall have filed a certified copy of such major street plan in the office of the Register of Deeds of Brown County, no plat of a subdivision of land lying within its territorial jurisdiction, shall be filed or recorded until it shall have been submitted to and a report and recommendations thereon made by said Commission to the Council and the Council has approved the plat."

was arbitrary and unreasonable, we need not reach this issue in view of our disposition of the case. What action the city commission will take in the event a plat that has been properly submitted to and approved by the city and county planning commissions is presented to it by petitioners, we do not know. As it is, petitioners have failed to establish that they were clearly entitled on the record before us to the relief that they sought to obtain through the extraordinary writ of mandamus. Accordingly, the judgment directing the issuance of the peremptory writ is reversed.

DUNN, C. J., and WINANS and COLER, JJ., concur.

ZASTROW, J., not having been a member of the Court at the time this case was orally argued, did not participate.