Framingham Clinic, Inc. v. Zoning Board of Appeals of Framingham.

The Framingham Clinic, Inc., & another *vs.* Zoning Board of Appeals of Framingham, & another.[1]

Middlesex.  October 6, 1980. — January 9, 1981.

Present: Hennessey, C.J., Quirico, Kaplan, Liacos, & Abrams, JJ.

*Zoning,* Clinic. *Abortion. Municipal Corporations,* By-laws and ordinances. *Building Permit. Practice, Civil,* Summary judgment. *Words,* "Clinic."

A proposed use of property as an abortion clinic was permissible under a zoning by-law which permitted as of right the use of property in the zoning district for professional offices and hospitals. [290-296]

Upon review, under G. L. c. 40A, § 17, of a decision of a town's board of appeals denying an application for a building permit, the judge properly entered summary judgment ordering the issuance of a permit where the board of appeals had erred in its interpretation of the zoning by-law and where the pleadings, affidavits, and exhibits submitted by the applicants were sufficient to demonstrate that their entitlement to the permit turned solely on the correct interpretation of the by-law. [296-299]

Civil action commenced in the Superior Court Department on July 10, 1979.

The case was heard by *Ronan, J.,* on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Aaron K. Bikofsky,* Town Counsel (*Thomas A. Grady* with him) for the defendants.

---

[1] The case name in full is as follows: "The Framingham Clinic, Inc., and Ann Donovan, Trustee of S.M.I. Coach Trust, u/d/t [under a declaration of trust], Plaintiffs *vs.* John B. Flynn, Vincent E. Garino and Arnold D. Mindick, as they are the Zoning Board of Appeals of the Town of Framingham, and George M. Seeley, as he is the Building Commissioner for the Town of Framingham, Defendants."

*Thomas H. Martin* (*Philip A. Mason & Clair A. Carlson, Jr.,* with him) for the plaintiffs.

QUIRICO, J. The defendants, who consist of the three members of the zoning board of appeals of the town of Framingham (board of appeals) and that town's building commissioner (building commissioner), appeal from the decision of a Superior Court judge, rendered on the plaintiffs' motion for summary judgment, which annulled a decision of the board of appeals and ordered that a building permit for alterations to premises located at 1319 Worcester Road, Framingham (locus), be issued to The Framingham Clinic, Inc. (Clinic). The plaintiffs consist of a trustee of the S.M.I. Coach Trust, a Massachusetts trust which owns the locus, and the Clinic, which leases it. We granted the plaintiffs' application for direct appellate review. The sole issue presented is whether, on the basis of the materials submitted[2] to him pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974), the judge correctly determined that no genuine issue of material fact was presented under the zoning by-law of Framingham (by-law) as to the Clinic's right to use the locus for its contemplated purposes. We hold that he did, and we affirm the judgment.

The facility proposed by the Clinic would provide gynecological services, including first trimester abortions. It would be staffed by nurses and trained counselors as well as medical doctors. Although a final floor plan does not appear on the record, the facility evidently would consist of about six rooms, including office space, a laboratory, a "treatment room" where abortions could be performed, and "recovery rooms" for immediate postoperative care. We assume, in the absence of any sworn statement or allegation to the contrary, that this facility would in all respects satisfy applicable State licensing and regulatory requirements.

---

[2] The materials consisted of the plaintiffs' complaint, their motion for summary judgment, three affidavits with attached exhibits in support of the motion, and five affidavits (three of which were by the building commissioner and the remaining two by members of the town's board of selectmen) in opposition to the motion.

The Clinic has for some time sought a suitable location for such a facility in the suburbs west of Boston.[3] At some time prior to November, 1978, the officers of the Clinic became interested in the suite of offices here in question. It is undisputed that these offices lie in an area of Framingham classified by the town's zoning by-law as a "business district." The Clinic's president accordingly sought from the building commissioner a preliminary determination as to whether the proposed facility would be a use allowable in such a district. With its request for this determination, the Clinic submitted a copy of each of the following documents: (a) its 1976 "Determination of Need Application" which was required to be filed for licensing by the Department of Public Health pursuant to G. L. c. 111, §§ 25B - 25H, and (b) a copy of "Proposed Clinic Policies and Procedures," which summarized the Clinic's program, focusing particularly on abortion services. By letter dated November 20, 1978, the building commissioner stated that based upon the materials submitted, as well as his conversation with the Clinic's president, he considered the Clinic's proposed use to be a "[b]usiness or professional office," a use permitted as of right by the applicable provisions of the by-law. His opinion was conditioned on the Clinic's "assurance that there will be no significant difference in staffing or operational format in any current application which you may submit." The building commissioner further emphasized the necessity of submitting a formal application for a building permit, as well as an off-street parking plan, and of obtaining certificates of inspection and use prior to occupation of the building.

---

[3] A prior decision of this court deals with the Clinic's attempt to establish a similar facility in Southborough. See *Framingham Clinic, Inc.* v. *Selectmen of Southborough*, 373 Mass. 279 (1977). In that case, we invalidated an amendment to Southborough's zoning by-law which effectively prohibited the operation of an abortion clinic in that town. According to materials submitted with the present appeal, the delay caused by the litigation resulted in the Clinic's losing its lease to the Southborough premises.

On the strength of the building commissioner's preliminary opinion, the plaintiffs proceeded with the purchase and lease of the locus, applied to the commissioner for a building permit, and sought approval of a parking plan by the town's planning board. On December 18, 1978, the Clinic submitted a preliminary floor plan of the proposed facility. The building commissioner requested revisions to bring the plans into compliance with the building code and altered plans were submitted on January 26, 1979. Further revisions were requested on February 20, 1979.

During this interim, the Clinic's plans became known to the public, and opposition to the proposed facility became apparent. On February 27, 1979, a special town meeting was convened to consider an amendment to the by-law, one effect of which would have been to require a special permit from the board of appeals prior to locating any clinic in a business district. See G. L. c. 40A, §§ 9 and 14. This change was rejected.

Following this town meeting, and before the Clinic had submitted final floor plans, the building commissioner indicated that he had reconsidered his initial opinion as to the appropriate classification of the Clinic's proposed use. On March 5, 1979, he wrote to the board of selectmen of Framingham stating the view that "further investigation" would be required prior to taking final action on the Clinic's application for a building permit. This letter noted the inclusion in the Clinic's floor plans of "functional areas not normal to a [p]hysician's [o]ffice," and queried whether the facility would be consistent with the purposes of the by-law, stated in § I B as "to establish such regulations for the uses of premises, as will protect and promote life, health, safety, morals, convenience and general welfare of the Townspeople." For the first time, the building commissioner raised the question whether the Clinic's use would require the granting of a special permit by the board of appeals. On March 12, 1979, the building commissioner notified the board of selectmen of his determination that such a permit would be required. The following day, he informed the

plaintiffs that they would have to obtain the special approval of the board of appeals before a building permit could be issued. In support of his ultimate conclusion that the clinic was not a "professional office" within the meaning of the by-law, he noted the "close 'kinship' . . . between hospitals and health care clinics" under certain state regulatory statutes, the proposed new by-law (rejected at the town meeting of February 27) distinguishing "clinics" from "professional offices," and his view that an abortion could not "promote life," an express purpose of the by-law as a whole.[4]

---

[4] The full text of the March 13 letter is as follows:

"I have completed the zoning investigation referred to in my 3/5/79 letter to the Framingham Board of Selectmen, a copy of which was mailed to you.

"I have concluded that the Building Permit for which you have applied may not be issued until this particular use has been granted by the Framingham Zoning Board of Appeals as required by Section III.F.1.d. of the Framingham Zoning By-Law.

"This conclusion was reached after careful study of the definitions of Professional Offices, which are an allowable use under Sec. III. F.1.c. of the Zoning By-Law, and Clinics, which are not included in a listing of specific allowable uses in Sec. III.F.1.d.

"Chapter 111 of Mass. Gen. Laws distinctly separates clinics from physician[s'] offices insofar as licensing and rules and regulations governing their operation. Chapter 155 again treats clinics differently from professional corporations. Throughout these statutes there is a close 'kinship' indicated between hospitals and health care clinics whereas none appears to exist between hospitals or clinics and a physician's (professional) office.

"My opinion is strengthened by Framingham's *proposed* new zoning by-law which separates 'hospitals, health clinics or other community health facilities' from 'offices of a medical, dental or clinical nature' and also from 'professional offices' of a nonmedical-related nature. There is also a distinction drawn between 'health clinics' and 'offices.'

"I also note that one of the purposes of the present zoning by-law as stated in Section I.B. is to 'protect and promote life . . . of the townspeople.'

"I recognize that an abortion may in some instances *protect* life, I cannot find that an abortion could *promote* life.

"For these reasons, I intend to deny the permit application under the provisions of Section III.F.1.d. of the zoning by-law. Prior to my taking such action, you may wish to amend the application to show the correct name of the present owner and/or the agent for the present owner.

"Please advise" (emphasis supplied in the original).

Pursuant to § V D 3 of the by-law and G. L. c. 40A, §§ 8 and 15, the Clinic sought an order from the board of appeals reversing the decision of the building commissioner. On June 22, 1979, after a hearing, the board of appeals voted two to one "to support the interpretation of the by-law given by the Building Official."[5] As allowed by G. L. c. 40A, § 17, the plaintiffs appealed the board's decision to the Superior Court. In their complaint the plaintiffs requested various forms of relief, including the following: (a) that the decision of the board of appeals be annulled; (b) that the proposed use be declared permissible; (c) that the building commissioner be ordered "to issue a building permit to the Plaintiffs subject to the approval of the Plaintiff's parking plan and subject to a determination by the Building Commissioner that the Plaintiff's proposed modifications comply with the State Building Code"; and (d) that the Superior Court "retain jurisdiction over this matter to ensure that the relief granted herein is not frustrated by further arbitrary, capricious and discriminatory conduct on the part of the defendants." After filing affidavits attesting to the existence of other similar uses in Framingham's business districts, the plaintiffs moved, pursuant to Mass. R. Civ. P. 56, for summary judgment. The defendants submitted counter affidavits. On September 25, 1979, the motion was granted, the judge ruling as follows: "In this case the scope and extent of this proposed abortion clinic's business is set forth in Exhibit 'B'. The proposed locus is within an area zoned as 'Business District'. The intended use is a permitted use within Section III F of the Framingham Zoning By-Law. The contention of the defendants that the plaintiff must apply for a special permit is invalid."

---

[5] General Laws c. 40A, § 15, as appearing in St. 1975, c. 808, § 3, states in pertinent part that "[t]he concurring vote of all the members of the board of appeals consisting of three members . . . shall be necessary to reverse any order or decision of any administrative official under this chapter . . . ." Section V D 1 of the town's zoning by-law establishes a board of appeals "to consist of three members."

Judgment was entered accordingly on November 29, 1979, granting the four measures of relief requested by the plaintiffs and specified above, and the defendants seasonably appealed therefrom.[6]

It is useful at this point to review briefly the provisions of the by-law in so far as they may be applicable to the locus. As originally adopted in 1939 and as amended from time to time thereafter, under the authority of The Zoning Act, G. L. c. 40A, §§ 1-17, and its predecessor statutes, the Framingham by-law comprehensively regulates the use of land within the town. The by-law divides the town into six classes of districts, the first two of which are "residence districts" and "business districts." § II A (1) and (2). Uses permitted in a residence district include, among others, a "[p]rofessional office . . . within the principal residence of a physician . . . provided that not more than two other persons are regularly employed therein," and subject to certain space restrictions, § III A (1)(c), and "private and public hospitals and dormitories accessory thereto," § III A (1)(d). Section III F of the by-law sets forth the uses permitted in business districts. Section III F (1)(a) permits "[a]ll uses that are permitted in General Residence Districts but subject to any of the conditions and restrictions set forth relative thereto." Use of a property for "[b]usiness or professional offices" is permitted by § III F (1)(c). The following section, § III F (1)(d), lists specifically thirty-nine permitted uses, ranging from "baker" to "wheelwright," then authorizes "such other uses as the Board of Appeals may grant."

The defendants challenge the judgment of the Superior Court on two grounds, the first legal, the second procedural

---

[6] A motion by the plaintiffs that the judgment take effect when entered was denied and the plaintiffs appealed therefrom. During the pendency of the appeal, the defendants agreed to issue a building permit for renovations to the locus subject to the condition that it would not be used as an abortion clinic until disposition of this appeal. The plaintiffs have therefore not pressed their appeal from the denial of their motion.

and factual. First, they argue as a matter of statutory construction that the facility proposed by the Clinic is neither a "professional office" nor a "hospital" as those terms are used in the applicable sections of the by-law. They thus conclude that the Clinic's use falls into the residual category of uses under § III F (1)(d) of the by-law requiring special approval of the board of appeals before a building permit can be issued. Because we agree with the judge that the proposed facility is not generically distinguishable from the uses allowed as of right by the by-law, we reach the defendants' second contention. They assert that sufficient questions of material fact as to the permissibility of the Clinic's use were raised in the Superior Court to preclude a grant of summary judgment on that issue. The defendants thus argue that even if their interpretation of the by-law is rejected, this case must be remanded for trial as to the permissibility of the Clinic's use under a correct interpretation of the by-law. In the circumstances of this case, we are persuaded that the grant of summary judgment was correct.

1. *Interpretation of the by-law.* The by-law does not specifically define either the term "professional office" or the term "hospital." In the absence of an express definition, the meaning of a word or phrase used in a local zoning enactment is a question of law, *Kurz* v. *Board of Appeals of N. Reading,* 341 Mass. 110 (1960), and is to be determined by the ordinary principles of statutory construction. Specific provisions of a zoning enactment are to be read in the context of the law as a whole, giving the language its common and approved meaning "without regard to . . . [the court's] own conceptions of expediency." *Id.* at 112, quoting from *Commonwealth* v. *S.S. Kresge Co.,* 267 Mass. 145, 148 (1929). *Shuman* v. *Aldermen of Newton,* 361 Mass. 758, 766 (1972). *Jackson* v. *Building Inspector of Brockton,* 351 Mass. 472, 475 (1966), and cases cited. "We derive the words' usual and accepted meanings from sources presumably known to the [by-law's] enactors, such as their use in other legal contexts and dictionary definitions." *Commonwealth* v. *Zone Book, Inc.,* 372 Mass. 366, 369 (1977).

The term "clinic" is used in a medical context to denote an institution offering medical services on an outpatient basis. Webster's New Int'l Dictionary 503 (2d ed. 1959). At the time of the board's action in this case, G. L. c. 111, § 52, as appearing in St. 1967, c. 891, § 2, defined a "clinic" for licensing purposes as "any institution or place however named, conducted for charity or profit, which is advertised, announced, established or maintained under the name of a clinic for the purpose of providing medical, surgical, dental, restorative or mental hygiene services to persons not residing therein. Clinic shall include such places as 'medical associates', 'dispensary', 'medical center', 'medical institute', 'rehabilitation center', 'rehabilitation institute', 'memorial', 'association', or such other designation of like import but not necessarily limited to the above mentioned," with certain exceptions not here relevant.[7] In a case holding void for vagueness a licensing statute applicable to "clinics," the Court of Appeals of the State of New York observed that the term is "inclusive of many kinds of individual, partnership, and group medical practice, which concededly are not subject to or intended to be subject to [the statute in question]." *People* v. *Dobbs Ferry Medical Pavillion, Inc.*, 33 N.Y.2d 584, 585, affirming 40 App. Div. 2d 324 (1973).

At a minimum, we think it clear from the breadth of these definitions that the absence of any mention of a "clinic" as a use permitted by the by-law is not determinative of this case. Cf. *Gallagher* v. *Selectmen of Falmouth*, 352 Mass. 307, 309 (1967). Further, we do not

---

[7]By St. 1979, c. 674, § 1, this definition was rewritten to exclude certain doctors' offices and clinics established for the sole use of the employees or students of a nonprofit organization or institution. This change, coming long after the by-law was written, and after the commencement of the Superior Court action in this case, has no direct bearing on our interpretation of the by-law. Both parties have correctly cited and discussed in their briefs the definition of "clinic" set forth by § 52 prior to the 1979 amendment. To the extent that the amendment influences our analysis at all, it reinforces our belief that the term "clinic" is commonly understood to encompass at least some doctors' offices.

disagree with the defendants' observation that not every facility which could properly be described as a "clinic" would fall within the uses permitted by the by-law. "[I]t is the use to which the premises are put rather than the external indicia of use which is controlling under the by-law." *Carpenter* v. *Zoning Bd. of Appeals of Framingham*, 352 Mass. 54, 59 (1967). In this case, we deal with an office suite of approximately six rooms devoted exclusively to the practice of a recognized medical specialty. Such a facility, however labeled, seems plainly to be within the range of uses allowed in Framingham's business districts. While the term "professional office" has been the source of some controversy in zoning cases,[8] the instant case hardly places us at the periphery of its meaning. Section III A (1)(c) of the by-law expressly recognizes a physician's office as a professional use. Other relevant authorities are in accord. The dictionary defines a "profession" as "a calling in which one professes to have acquired some special knowledge used by way either of instructing, guiding, or advising others, or of serving them in some art," and cites medicine, together with law and theology, as the paradigms. Webster's New Int'l Dictionary 1975 (2d ed. 1959). Substantially identical definitions of the word are given by the United States Supreme Court and a leading treatise on the law of zoning. See *United States* v. *Laws*, 163 U.S. 258, 266 (1896). 3 R.M. Anderson, American Law of Zoning, § 16.11, at 69 (2d ed. 1977).

That the facility contemplated by the Clinic will employ nurses and trained counselors to assist in the delivery of medical services, and will include physical areas devoted to

---

[8] While this court has held that certain uses are not "professional" for zoning purposes, we have never undertaken a comprehensive definition of the term. See *Seaman* v. *Zoning Bd. of Appeals of Holliston*, 340 Mass. 488 (1960) (real estate brokerage held not to be a professional use); *Building Comm'r of Brookline* v. *McManus*, 263 Mass. 270 (1928) (undertaker's business held not to be a professional use). See also Annot., Construction and Effect of Zoning Provision Permitting Accessory Use for "Professional Office," 24 A.L.R.3d 1128 (1969).

382 Mass. 283                                                            293

Framingham Clinic, Inc. v. Zoning Board of Appeals of Framingham.

their use, does not alter its character for zoning purposes. Section III A (1)(c) of the by-law authorizes the employment of as many as two assisting personnel in a professional office located in a "single residence" district, a classification more restrictive than the "business district" in which the Clinic would be located. A construction of the by-law which did not allow greater latitude to employ assistants in the less restrictive zone would be unreasonable, and is to be avoided. Cf. *Green* v. *Board of Appeal of Norwood*, 358 Mass. 253, 258-259 (1970). More fundamentally, we think that absent some express limitation, the right to employ personnel and facilities reasonably necessary to a particular professional use is implicit in the authorization to establish a professional office. Any other construction would "[destroy] the privilege given in that it would permit [the professional] to have an office but deny him, for all practical purposes, the privilege of using it." *Red Acres Improvement Club, Inc.* v. *Burkhalter*, 193 Tenn. 79, 87 (1951). See 2 A.H. Rathkopf, Zoning and Planning § 23.02 (4th ed. & Supp. 1980) ("It has been decided that [where the professional use is one which is specifically listed in the ordinance] such use includes the use of all equipment, facilities, and assisting personnel reasonably necessary for the practice of the profession involved").[9]

In denying the Clinic a building permit, the defendants relied in part on the "kinship" between hospitals and clinics, asserting that the similarity was sufficient to differentiate the proposed facility from other uses allowed as "professional offices." We draw the opposite conclusion. While we think it clear that the clinic here at issue would qualify as a professional office under any fair reading of the by-law, we need not rest our decision in this case on that ground alone. Framingham permits both professional offices and private hospitals to operate in its business districts. When a

---

[9] We note that a for-profit corporation organized to deliver specialized medical services might equally well be characterized as a business office, also a use allowed by the by-law.

municipality allows as of right uses which lie at both ends of
the spectrum in terms of a particular category of uses —
here, the delivery of medical services — less importance
need be attached to fixing precisely where on that spectrum
a specific use lies. Cf. *N.R. Fairbanks Co.* v. *Blaine,* 308
Minn. 315, 317-318 (1976) ("If both [of the plaintiff's con-
templated uses] are individually permissible . . . we con-
clude that the combination of these uses must also be found
permissible, absent a showing by the city that the hybrid use
is in some way injurious to the health, safety, or welfare of
the neighboring landowners or the community at large");
*Crain* v. *Louisville,* 298 Ky. 421, 425 (1944) (nursing home
permitted by ordinance allowing both hospitals and board-
ing houses; "[w]hile perhaps it could not be characterized as
either exclusively, it is certainly something in between the
two establishments and, as the ordinance permits use for
either purpose, it must be construed as permitting use of an
institution that is between the two in character, for the ex-
tremes include the mean").

Nothing in the authorities cited by the defendants per-
suades us that the proposed facility will have an impact on
the community significantly different from uses which the
defendants concede are presently allowed. The defendants
point first to the definitions of "clinic" and "hospital" con-
tained in G. L. c. 111, § 52, and correctly observe that, as
noted previously, clinics are there differentiated from
hospitals primarily by the fact that they provide outpatient
rather than residential care. The defendants fail, however,
to explain how this difference can justify the denial of a per-
mit to build in an area where both outpatient (doctors' of-
fices) and inpatient (hospital) institutions are permitted. To
the extent that the definitions set forth in § 52 suggest a
generic similarity between clinics and hospitals, they sup-
port our conclusion that the proposed use is one permitted as
of right. Beyond that, we think these statutory definitions,
written for the purpose of regulating and licensing health
care facilities, "[relate] 'only vaguely, if at all, to . . . [the
interpretation of a zoning by-law. The statute's] concern is

with matters other than zoning.'" *Selectmen of Hatfield* v. *Garvey*, 362 Mass. 821, 825-826 (1973), quoting from *Manchester* v. *Phillips*, 343 Mass. 591, 593 n.3 (1962). The defendants' reliance on cases from other jurisdictions distinguishing between "clinics" and "professional offices" is similarly misplaced. Two of these cases deal with zoning enactments which permitted "professional offices" but not "hospitals," and turn on the similarity between the "clinic" facilities in question and hospitals. See *Long* v. *Elk Grove Village*, 64 Ill. App. 3d 1006, 1010 (1978) (reversing trial court determination that an abortion clinic was a use allowed as of right in a zone permitting business and professional offices; remanding for an evidentiary hearing as to whether the clinic in question is "a business or professional office under the ordinance or whether in fact it is more like a hospital"). *People ex rel. D'Iorio* v. *Alfa Realty Co.*, 69 Misc. 2d 475 (N.Y. City Ct. 1972) (methadone clinic is a "hospital" related facility, not a use permitted as a "professional office"). A third case, *State* v. *Mitchell*, 66 Misc. 2d 514 (N.Y. Sup. Ct. 1971), holds that an abortion clinic must meet statutory licensing requirements applicable to hospitals, and rejects a claim of exemption based on the similarity of the facility to a doctor's office. We think it adequate to repeat that we do not deal here with the application of a licensing statute.

The remaining grounds cited for the administrative denial of the Clinic's application are not argued in the defendants' brief, and are in any event without merit. The rejected proposed by-law amendment, which would have required special permits for clinical facilities, has no bearing on the proper interpretation of the existing by-law, nor could it expand the building commissioner's powers under it. *Ouellette* v. *Building Inspector of Quincy*, 362 Mass. 272, 279-280 (1972). See *Fellsway Realty Corp.* v. *Building Comm'r of Medford*, 332 Mass. 471 (1955). Where a zoning by-law allows a particular use, the personal opinion of a local zoning administrator as to whether that use promotes "life" or any other of the by-law's stated purposes is irrele-

vant.  Such recitations of legislative purpose "suggest stand-ards for the exercise of discretion where such discretion is otherwise provided.  They are not themselves a source of discretion." *McCaffrey* v. *Board of Appeals of Ipswich,* 4 Mass. App. Ct. 109, 112 (1976).  See *Baker* v. *Planning Bd. of Framingham,* 353 Mass. 141, 145 (1967); *Daley Constr. Co.* v. *Planning Bd. of Randolph,* 340 Mass. 149, 155 (1959).  If the town of Framingham had wished or intended to distinguish between clinics and other medical facilities for zoning purposes, it could have done so by the use of pre-cise language in the by-law.[10]  *Selvetti* v. *Building Inspector of Revere,* 356 Mass. 720 (1969).  It may not now accom-plish that result by a patently unreasonable interpretation of the by-law as written.

2. *Appropriate relief.*  We have concluded that the de-fendants interpreted the by-law incorrectly, and that the grounds on which they relied in denying the Clinic's appli-cation, whether taken singly or cumulatively, are inade-quate to support the action taken.  The defendants argue, however, that in the Superior Court they demonstrated suf-ficient issues of material fact as to the ultimate permissibili-ty of the proposed use to preclude summary judgment on that question.  Specifically, they contend that the judgment ordering the issuance of a permit should be vacated and this case remanded for trial to settle whether abortions are "nor-mally and appropriately" performed in physicians' offices and whether the extent of the activities included in the Clinic's intended use distinguishes it from other uses al-lowed in Framingham's business districts.

---

[10] We intimate here no view as to the validity of the zoning enactment singling out clinical facilities for special treatment.  In his memorandum, the Superior Court judge cited our decision in *Framingham Clinic, Inc.* v. *Selectmen of Southborough,* 373 Mass. 279 (1977), and there is language in the memorandum suggesting that, as enforced by the defendants, the Framingham by-law might amount to an effective local ban on abortion clinics of the sort held invalid in that decision.  Because we do not believe that the by-law here at issue, properly construed, has any such effect, we need not comment on that part of the trial judge's opinion.

A holding that a board of appeals erred in its interpretation of a zoning by-law or ordinance, standing alone, will not ordinarily suffice to support an order that a permit issue. *Parrish* v. *Board of Appeals of Sharon*, 351 Mass. 561, 567-568 (1967). The burden is on the applicant to demonstrate in the Superior Court an entitlement to a building permit. *Id.* Upon such a showing, the issuance of a permit is a matter of duty, not discretion, and relief in the form of an order that a permit issue is appropriate. See *Fellsway Realty Corp.* v. *Building Comm'r of Medford*, *supra* at 492; *Caputo* v. *Board of Appeals of Somerville*, 330 Mass. 107, 110 (1953); Ford, Judicial Review in Zoning Variance Cases and Related Matters, 61 Mass. L.Q. 24, 27-28 (1976). We have repeatedly approved of such relief in appropriate cases. See *McCarthy* v. *Board of Appeals of Ashland*, 354 Mass. 660 (1968); *Deutschmann* v. *Board of Appeals of Canton*, 325 Mass. 297 (1950); *D'Ambra* v. *Zoning Board of Appeal of Attleboro*, 324 Mass. 61 (1949); *Shea* v. *Inspector of Bldgs. of Quincy*, 323 Mass. 552 (1949). "These cases usually arise when the [board of appeals] has misinterpreted the relevant by-law or ordinance." *Ferrante* v. *Board of Appeals of Northampton*, 345 Mass. 158, 162 (1962).

In this case, the pleadings, coupled with the affidavits and exhibits submitted with the plaintiffs' motion for summary judgment, were sufficient to demonstrate that the Clinic's entitlement to a building permit turned solely on a correct interpretation of the by-law. Because this was a question of law, the judge's disposition of it by summary judgment was entirely proper. Neither of the points raised by the defendants on this appeal stands in the way of this conclusion.

First, as the trial judge correctly noted, the authority to regulate specific requirements for health facilities has been delegated to the Department of Public Health. See generally, G. L. c. 111. See also *Framingham Clinic, Inc.* v. *Selectmen of Southborough*, 373 Mass. 279, 289 (1977) (Hennessey, C.J., concurring, with whom Quirico, J.,

joined). No allegation is made that the facility here in question does not meet those requirements as they pertain to the performance of first trimester abortions. For that reason, the only question relevant to zoning classification is whether the specific facility through which those services will be delivered comes within the scope of the uses permitted by the by-law, a question we have already settled.

As to the intensity of the Clinic's use, we agree with the defendants that the extent of a particular use may in some instances distinguish it sufficiently from other generically similar uses permitted by a zoning enactment to support the denial of a building permit. Here, however, it is undisputed that the Clinic's use will be confined to a single suite of some six offices. The defendants by affidavit indicated that the denial of the Clinic's application was based "solely" on the plans submitted. The plaintiffs explicitly alleged in their complaint that numerous substantially identical uses had been and were allowed in Framingham's business districts. With their motion for summary judgment, they submitted affidavits attesting to the existence of such uses. These affidavits showed not only that the defendants had previously permitted uses sharing the purportedly distinctive features of the instant facility, but also that there was nothing unusual about a suite of six rooms which would tend to distinguish it from other professional uses already permitted. We think these affidavits were sufficient to require the defendants to meet the allegations of fact contained therein by setting forth specific facts, by affidavit or otherwise, showing some issue or issues of fact requiring trial. See Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974). "If the movant presents credible evidence that would entitle him to a directed verdict if not controverted at trial, this evidence must be accepted as true on a motion for summary judgment when the party opposing the motion does not offer counter-affidavits or other evidentiary material supporting his contention that an issue of fact remains, or does not show a good reason, in accordance with rule 56 (f), why he is unable to present facts justifying his opposition to the

motion." 10 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2727, at 532-534 (1973 & Supp. 1980). See *O'Brion, Russell & Co.* v. *LeMay,* 370 Mass. 243, 245 (1976). While the defendants attempted by counter-affidavit to distinguish two of the facilities cited by the Clinic, we are left with the overwhelming impression that the bulk of them are indistinguishable from the Clinic's contemplated use. We recognize that summary judgment will in many instances be an inappropriate vehicle for disposing of zoning cases due to the often complex and fairly disputable nature of the underlying facts. Nevertheless, in this area as elsewhere, we adhere to "the principle that well pleaded cases and motions for summary judgment supported by affidavits and other materials serve a 'salutary purpose' which should not be 'set at naught' where the opposing party merely raises 'vague and general allegations of expected proof.'" *Community Nat'l Bank* v. *Dawes,* 369 Mass. 550, 555-556 (1976), quoting from *Albre Marble & Tile Co.* v. *John Bowen Co.,* 338 Mass. 394, 397 (1959). See *Cape Ann Land Dev. Corp.* v. *City Council of Gloucester,* 374 Mass. 825 (1978) (approving order granting zoning variance issued on plaintiffs' motion for summary judgment). The Superior Court judge's order in the instant case is carefully fashioned to require the plaintiffs' compliance with any other applicable provisions of the zoning by-law prior to their occupation and use of the locus. Such compliance is ensured by the lower court judge's retention of jurisdiction in this matter. In these circumstances, we perceive no legitimate purpose to be served by further trial proceedings, and thus we affirm the judgment of the Superior Court judge in full.

*So ordered.*