**SPRINT SPECTRUM L.P., Plaintiff,**

v.

**TOWN OF EASTON, et al., Defendant.**

**CA No. 97–10313–JLT.**

United States District Court,
D. Massachusetts.

Oct. 6, 1997.

Elizabeth A. Ritvo, Wayne F. Dennison, Brown, Rudnick, Freed & Gesmer, Boston, MA, for Sprint Spectrum, L.P.

Martyn H. Lincoln, Town of Easton, North Easton, MA, for Town of Easton, Town of Easton Bd. of Appeals, Stephen J. McAlarney, Paul Pino, Joseph Derian, Barbara Paras, Lisa Motta.

## MEMORANDUM

TAURO, Chief Judge.

Plaintiff, Sprint Spectrum L.P., is seeking to provide a national wireless communications network using a new type of digital technology called Personal Communications Services ("PCS"). In 1995, Sprint Spectrum obtained PCS licenses for Massachusetts and Rhode Island from the Federal Communications Commission. In August 1996, Sprint Spectrum filed for a special permit with Defendant, Town of Easton, Zoning Board of Appeals (the "Board"), to construct a 150 foot telecommunications tower, or "cell site," for its PCS network.

The Board denied the application for a special permit on November 23, 1996. Sprint Spectrum claims that this denial violates § 704 of the Federal Telecommunications Act of 1996, (the "TCA"), 47 U.S.C. § 332(c), exceeds the Board's authority under M.G.L. c. 40a, and violates Plaintiff's substantive rights created by the TCA under 42 U.S.C. § 1983. Sprint Spectrum seeks injunctive relief requiring the Board to issue the special permit and declaratory relief discerning the rights and liabilities of the parties.

Defendant claims that the decision was well within its discretionary functions and was in accordance with the TCA.

## I.

### BACKGROUND

■■■ On February 8, 1996, President Clinton signed the TCA into law. The TCA is considered "expansive legislation designed primarily to increase competition in the telecommunications industry." *BellSouth Mobility, Inc. v. Gwinnett County*, 944 F.Supp. 923, 927 (N.D.Ga.1996). Although the TCA "does not completely preempt the authority of state and local governments to make decisions regarding the placement of wireless communications service facilities within their borders," it does impose significant limitations on this authority. *Id.* Additionally, the TCA shifts the burden of proof to the government agency that denied the applicant's siting request "rather than burdening the applicant with producing substantial evidence supporting its approval." *United States Cellular Corp. v. Board of Adjustment of City of Des Moines, Polk County District Court*, LACL No. CL 00070195 (Iowa District Court for Polk County, January 2, 1997). The TCA further provides that any person adversely affected by a state or local government's action, or failure to act, that is inconsistent with § 332(c)(7) may seek expedited review in the federal courts. *See* 47 U.S.C. § 332(c)(7)(B)(v).

■■■ The TCA was passed "in order to provide a 'pro-competitive, deregulatory na-

tional policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition. . . .' " *Paging, Inc. v. Board of Zoning Appeals for County of Montgomery*, 957 F.Supp. 805, 807 (W.D.Va.1997) (citation omitted). More specifically, "[w]ith this Act, Congress has tried to stop local authorities from keeping wireless providers tied up in the hearing process." *Westel–Milwaukee Co. v. Walworth County Park and Planning Comm'n.*, 205 Wis.2d 244, 556 N.W.2d 107, (App.1996).

The legislative history evidences clear Congressional intent to take "down the barriers" to telecommunications. Cong. Rec. H1151 (Feb. 1, 1996) (statement of Rep. Markey). In fact, Congress viewed the TCA as "antiregulatory and antibureaucratic in philosophy," *Id.* H1161 (statement of Rep. Oxley), and considered the TCA to provide benefits to consumers and businesses alike.

Recognizing that such sweeping changes in the industry may be met with resistance, federal lawmakers limited the ability of state and local officials to delay implementation of the TCA. Specifically, Section 704 of the TCA states that actions taken by State or local governments shall not prohibit, or have the effect of prohibiting, the placement, construction or modification of personal wireless services. *See* 47 U.S.C. § 332[c][7][B][i][II]. Courts have, accordingly, recognized that the TCA effects "substantive changes to the local zoning process," *Westel–Milwaukee Co.*, 205 Wis.2d at 244, 556 N.W.2d at 107, by preempting any local regulations, including zoning regulations, which conflict with its provisions. *See Paging, Inc.*, 957 F.Supp. at 808 (finding that where Congress has so indicated, federal interest in wireless communications takes priority over state zoning authority).

One of the TCA's provisions, Section 332(c)(7), limits the ability of a state or local authority to apply zoning regulations to wireless telecommunications. Accordingly, local zoning measures are permissible only to the extent they do not interfere with the TCA. Specifically, the TCA states that, in regulating the placement or construction of personal wireless services facilities, a state or local government may not "unreasonably discriminate among providers of functionally equivalent services" or "prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B). Additionally, the TCA provides that "[a]ny decision by a State or local government . . . to deny a request to place, construct or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." *Id.* at § 332(c)(7)(B)(iii).

## II.

### ANALYSIS

Plaintiff argues that both the facts and the law are clear and, therefore, summary judgment is appropriate. Defendant contends that the record is "replete with differences of opinion as to inferences to be drawn from the material facts." Defendant's Opposition to Plaintiff's Motion for Summary Judgment at 4. The differences that Defendant cites, however, relate only to interpretation of the legal standards involved and not the material facts themselves.[1]

Based on the record before the court, no issues of material fact exist, only questions of law.

### A. *Count I: Violation of the TCA*

In Count I of the complaint, Plaintiff alleges that the Board violated § 704 of the TCA by unreasonably discriminating among providers of functionally equivalent services, by

---

1. In elucidating the purportedly "factual" differences between the parties, Defendant points only to inferences to be drawn relative to the proper interpretation of the provisions of the TCA as well as Easton's Zoning By–Laws and their respective application to the facts of this case. Additionally, at a Rule 16.1 hearing held on June 30, 1997, Town Counsel explicitly stated that the case was amenable to summary disposition. *See Plaintiff's Response to Defendant's Opposition to Motion for Summary Judgment* at p. 2 n. 1. Furthermore, the Local Rule 16.1D Joint Statement filed on June 30, 1997 states that "[t]he parties each believe that this action is suitable for summary disposition. . . ." Local Rule 16.1D Joint Statement at 2.

prohibiting the provision of PCS services in the Easton area, and by failing·to make findings supported by substantial evidence in the record.

Both parties agree that Plaintiff's application for a Special Permit constitutes a request to provide "personal wireless services" within the meaning of TCA and, as such, is entitled to protection under the Act.

Although this is a case of first impression in the First Circuit, other jurisdictions considering this issue have held that "Congress' command 'that local authorities "shall not" discriminate indicates it wants local decision makers to consider how their zoning decisions affect the marketplace of communication services.'" *United States Cellular Corp. v. Board of Adjustment of City of Des Moines, Polk County District Court*, LACL No. CL 00070195 (quoting *Westel–Milwaukee Co. v. Walworth County Park and Planning Comm'n.*, 205 Wis.2d 244, 556 N.W.2d 107 (App.1996)). Furthermore, the TCA's legislative history clarifies that local Boards have discretion to treat facilities differently only in so far as they "create different visual, aesthetic, or safety concerns ... to the extent permitted under generally applicable zoning requirements." H.R.Rep. No. 458, 104th Cong., 2d Sess. 208 (1996).

■ In denying Plaintiff's request for a Special Permit, the Board improperly discriminated between providers of functionally equivalent services by relying upon factors other than those permitted under the TCA. With respect to safety, the Board explicitly stated in its findings that Plaintiff's request would not create undue traffic congestion or unduly impair pedestrian safety, only that it would add to an already congested area. *See* Finding 3, Defendant's Opposition to Plaintiff's Motion for Summary Judgment at Exhibit C. Similarly, with respect to visual or aesthetic concerns, the Board, although noting that an adverse impact on the town's historical district would be significant, concluded that the requested use "will not im-

pair the integrity or character of the district or adjoining zones." *See* Finding 5 Defendant's Opposition to Plaintiff's Motion for Summary Judgment at Exhibit C. In its findings, the Board stated, however, that it "did not believe that the public interest is served by construction of the proposed 150 foot tower to enable marketing of wireless communications services that are already available to the public." *See* Finding 5 Defendant's Opposition to Plaintiff's Motion for Summary Judgment at Exhibit C.

Plaintiff is correct in noting that this basis for the Board's decision was discriminatory under the TCA. The Board determined, in effect, that the existing cellular service in Easton is all that is necessary and that no further competition from Plaintiff, or presumably any other new entrant whose network would require a site within Easton, will be permitted. This reasoning frustrates the primary purpose of the TCA "to increase competition in the telecommunications industry." *BellSouth Mobility, Inc. v. Gwinnett County*, 944 F.Supp. 923, 927 (N.D.Ga.1996); *See also Western PCS II Corp*, 957 F.Supp. at 1237(denial of Special Exemption wrongfully denied PCS provider "the opportunity to compete with its competitors [in given area] ... thereby reduc[ing] its ability to compete, by requiring it to find an alternative site").

■ The effect of the Board's decision, on this basis, is to protect existing providers of wireless services within Easton from further competition.[2] As the court in *Jefferson County* recognized, this is precisely the type of "disadvantage" Congress sought to eliminate by·prohibiting local boards from discriminating between providers of equivalent services and from acting in a manner prohibiting the provision of new technology. *See Sprint Spectrum L.P. v. Jefferson County*, 968 F.Supp. 1457 (N.D.Ala.1997). By deciding as it did, the Board favors existing providers, sheltering them from the very competition Congress sought to create when it enacted the TCA. Accordingly, new entrants

**2.** Defendant erroneously states that it has not discriminated against Plaintiff, because it has no interest in protecting other providers of telecommunications services. In other words, Defendant has no discriminatory intent. But the Board's intent is irrelevant. It is the discriminatory effect of the Board's application of the By-Laws and the basis upon which it denied Plaintiff's request for a special permit that are controlling.

offering potentially superior technology are burdened.

■■■ Although Defendant argues that the permit was denied for two other reasons, neither of these can properly form the basis of the Board's decision to deny the special permit.[3] The evidence supporting the Board's denial must show more than generalized concerns. *See Illinois RSA No. v. County of Peoria,* 963 F.Supp. 732, 745 (C.D.Ill.1997).

Finally, because the TCA "effectively preempts state law in several respects, including the burden of proof, ... it is the Board's burden to produce substantial evidence supporting its denial of plaintiff's application." *United States Cellular Corp.,* at 5. In this case, Defendant has failed to support its contention that its denial of Plaintiff's request for a special permit was based on substantial evidence of permissible considerations. Accordingly, the court finds that the Board's decision constituted unreasonable discrimination between providers of wireless services, in violation of the TCA, and therefore, summary judgment is ALLOWED for Count I.

■■■ As was recognized by the court in *BellSouth,* "simply remanding the matter to the [B]oard for their [further] determination would frustrate the TCA's intent to provide aggrieved parties full relief on an expedited basis." 944 F.Supp. at 992; *see also Western PCS II Corp.,* 957 F.Supp. at 1237 (finding the Petitioner's request for mandamus relief the appropriate means to resolve the matter); and, *Illinois RSA No.3,* 963 F.Supp. at 746 (finding that although, in light of defendant's violation of the TCA, the court could remand the case to the local zoning board, it would be a "waste of time and frustrate the TCA's direction to expedite these proceedings"). The court, therefore, concludes that the appropriate relief under the TCA is an injunction directing the Defendant to issue the requested Special Permit.

### B. *Count II: State Law Governing Local Boards*

■■■ Because the relief requested under Count I is identical to that sought under this count, this Court need not decide this issue in order to resolve the case. In addition, this is a state law claim presumably before this Court under pendant jurisdiction. Summary Judgment having been granted on the federal question in Count I, this Court will no longer retain jurisdiction over Count II and dismisses it for lack of subject matter jurisdiction.

### C. *Count III: Declaratory Judgment*

■■■ In Count III of the complaint, Plaintiff improperly seeks declaratory judgment that Defendant violated the TCA and Massachusetts law.

■■■ The purpose of declaratory judgment under·28 U.S.C. § 2201, "is to allow the parties to understand their rights and liabilities so that they can adjust their future action to avoid unnecessary damages." *Rockwell International Corp. v. IU International Corp.,* 702 F.Supp. 1384, 1388 (1988) (citing *ACandS Inc. v. Aetna Casualty & Surety Co.,* 666 F.2d 819, 823 (3rd Cir.1981)); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2751 at 570 (2nd ed.1983) (declaratory judgment "permits actual controversies to be settled before they ripen into violations of the law"). Here, by contrast, Plaintiff is seeking declarations that Defendant's past conduct in denying the Plaintiff's special zoning permit, violated federal and state law.

Although Plaintiff is correct in noting that an actual controversy exists, and that this court enjoys jurisdiction over the controver-

---

**3.** The Board argues that the requested use is not essential or desirable to the public convenience or welfare, in part because the technology is "not dissimilar to existing cell telephones, and remote beeper services." *See* Finding 2, Defendant's Opposition to Plaintiff's Motion for Summary Judgment at Exhibit C. This basis for denial, however, is directly in conflict with the mandate of the TCA as a pro-competitive vehicle in the marketplace of telecommunications. The Board also notes in its findings that alternative sites exist which may have less impact in the town. As discussed in section C, below, under Massachusetts law, this is not a permissible basis to deny a special permit. *See Slater v. Board of Appeals of Brookline,* 350 Mass. 70, 73, 213 N.E.2d 394, 396 (1966).

sy, declaratory relief is an inappropriate remedy for a violation that has already occurred. Accordingly, the court hereby DENIES Plaintiff's request for declaratory judgment and DISMISSES Count III.

### D. *Count IV: Defendant violated Plaintiff's rights secured under § 1983*

In Count IV of the complaint, Plaintiff correctly alleges that Defendant violated the Civil Rights Act, 42 U.S.C. § 1983, by denying Plaintiff its rights under the TCA. The Supreme Court, in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), concluded that, under the literal language of the statute, § 1983 suits are available whenever a person acting under color of state law allegedly violates any federal law. *Id.* at 4, 100 S.Ct. at 2504. The Court later refined this conclusion, holding that enforcement of federal rights through § 1983 will be denied only when the federal statute at issue implicitly or explicitly precludes a § 1983 action, *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (holding that the comprehensive enforcement mechanisms promulgated under the Federal Water Pollution Control Act and the Marine Protection, Research, and Sanctuaries Act precluded an individual § 1983 action); *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) (Education and Handicapped Act; same), or where the federal statute at issue does not create a substantive right. *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 21, 101 S.Ct. 1531, 1542, 67 L.Ed.2d 694 (1981).

The TCA does not implicitly or explicitly foreclose § 1983 suits. More particularly, the TCA does not provide a comprehensive enforcement scheme intended to supplant a § 1983 remedy. In addition, the TCA creates substantive rights by providing that "[a]ny person adversely affected by any final action ... by a ... local government or any instrumentality thereof ... may ... commence action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v).

Given the foregoing, as well as the fact that enforcement of Plaintiff's rights under the TCA through a § 1983 action does not "strain judicial competence," a § 1983 remedy is available in this instance.[4] *Blessing v. Freestone,* — U.S. —, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997).

Because, as a matter of law, Defendant has violated Plaintiff's rights under the TCA, and because no additional facts necessary to establish a claim under § 1983 remain in dispute, the Court hereby ALLOWS Plaintiff's Motion for Summary Judgment as to Count IV.

### III.

### *CONCLUSION*

Sprint Spectrum's Motion for Summary Judgment is ALLOWED as to Counts I and IV and DENIED as to Counts II and III which are dismissed without prejudice. An order will issue.

### ORDER

For the reasons stated in the accompanying memorandum, Sprint Spectrum L.P.'s Motion for Summary Judgment is hereby ALLOWED as to Counts I and IV and DENIED as to Counts II and III. Counts II and III are dismissed without prejudice.

An injunction is hereby entered directing the Town of Easton to issue the requested Special Permit to Sprint Spectrum L.P. on or before October 20, 1997.

IT IS SO ORDERED.

---

**4.** Notably, it is beyond dispute that Defendant, a local zoning board, acted under color of state law.