**TELECORP REALTY, LLC, Plaintiff,**

**v.**

**The TOWN OF EDGARTOWN, The Town of Edgartown Planning Board and Norman Rankow, Alan Wilson, Kenneth A. Southworth, Paul Brewster and Michael Donaroma, as they are members of the Town of Edgartown Planning Board, Defendants.**

**Civil Action No. 99–11673–JLT.**

United States District Court,
D. Massachusetts.

Jan. 18, 2000.

---

4. Because Swenson has not addressed materiality in its submissions, it may move for reconsideration on this point.

Peter B. Morin, McDermott, Quilty & Miller LLP, Boston, MA, for Telecorp Realty LLC.

Ronald H. Rappaport, Jason R. Talerman, Reynolds Rappaport & Kaplan, Edgartown, MA, Douglas I. Louison, Merrick and Louison, Boston, MA, Patrick J. Costello, Merrick, Louison & Costello, Boston, MA, for The Town of Edgartown, Massachusetts, Town of Edgartown Planning Board.

Douglas I. Louison, Merrick and Louison, Boston, MA, Patrick J. Costello, Merrick, Louison & Costello, Boston, MA, for Norman Rankow, Alan Wilson, Kenneth Southworth, Paul Brewer, Michael Donaroma.

## MEMORANDUM

TAURO, Chief Judge.

Plaintiff moves pursuant to Fed.R.Civ.P. 65(a) for entry of a preliminary injunction requiring Defendants to issue a special permit and a building permit allowing the installation of telecommunications antennae on an existing guyed tower located in Edgartown, Massachusetts, arguing that the denial of the application for a special permit violates section 704 of the Federal Telecommunications Act of 1996, 47 U.S.C. § 332(c).

### I.

Plaintiff, Telecorp Realty LLC ("Telecorp"), is a Delaware corporation seeking to provide a wireless telecommunications network in specified sub-markets of metropolitan areas in New England using a new type of digital technology called Personal Communications Services. Telecorp operates under license from the Federal Communications Commission ("FCC") pursuant to a joint venture agreement with AT & T Wireless PCS, Inc. Defendants are: the Town of Edgartown; the Town of Ed-

gartown Planning Board ("the Board"); and various members of the Board.

The facts are generally uncontested. In February 1999, Telecorp filed for a special permit with the Planning Board to install telecommunications equipment on an existing 160' guyed tower owned by New England Telephone/ Bell Atlantic in Edgartown ("the Tower"). The Planning Board denied the application for a special permit on July 20, 1999. Plaintiff asserts that the denial violates section 704 of the Federal Telecommunications Act of 1996 ("the TCA"), 47 U.S.C. § 332(c), exceeds the Planning Board's authority under Mass. Gen.Laws ch. 40A, and violates Plaintiff's substantive rights created by the TCA under 42 U.S.C. § 1983.

## II.

■ Plaintiff moves for a preliminary injunction requiring the Planning Board to issue the special permit and a building permit. When considering a request for injunctive relief, the court must weigh four factors: (1) the likelihood of success on the merits; (2) the potential for irreparable harm to the moving party; (3) the balance of the relevant equities; and (4) the public interest. *See Strahan v. Coxe*, 127 F.3d 155, 160 (1st Cir.1997).

## A.

Plaintiff contends that the Board's decision to deny its application for a special permit violates section 332(c)(7) of the TCA because it: (1) "unreasonably discriminates" between Plaintiff and Plaintiff's major competitor providers of telecommunications services; and (2) is unsupported by "substantial evidence" in the written record.

The Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 332(c), constitutes "expansive legislation designed primarily to increase competition in the telecommunications industry." *BellSouth Mobility, Inc. v. Gwinnett County*, 944 F.Supp. 923, 927 (N.D.Ga.1996). Accordingly, the TCA significantly limits the ability of state and local authority to apply zoning regulations to wireless telecommunications. *See Sprint Spectrum L.P. v. Town of Easton*, 982 F.Supp. 47, 49 (D.Mass.1997) (Tauro, J.). Section 332(c)(7) of the TCA requires, among other things, that state and local government not "unreasonably discriminate among providers of functionally equivalent [telecommunications] services." 47 U.S.C. § 332(c)(7). Section 332(c)(7) further mandates that "any decision . . . to deny a request to place, construct or modify personal wireless service facilities . . . be in writing and supported by substantial evidence contained in a written record." *Id.*

■ Defendants support the Board's decision to deny Plaintiff's application for a special permit on four grounds: (1) the Board had discretion to conclude that the Tower had reached overload capacity; (2) the Board had discretion to determine that the Tower was not the "best" location for Plaintiff's antennae; (3) constituent concern for the aesthetic impact of Plaintiff's antennae; and (4) constituent concern for the health effects of the additional antennae. All these asserted grounds, however, are either impermissible considerations of denial under the TCA, or unsupported by "substantial evidence" in the written record.[1]

■ First, Defendants argue that the denial was predicated in part on a majority of the Board's determination that the Tower had reached "overload" capacity. At

---

1. Relying on *Board of Aldermen of Newton v. Maniace*, 45 Mass.App.Ct. 829, 702 N.E.2d 391 (1998), Defendant argues that, under Massachusetts law, "a decision to deny an application for a special permit does not require detailed findings by the permit granting authority." But Massachusetts law in the context of a telecommunications provider's application for a special permit is not controlling. The TCA "effects substantive changes to the local zoning process . . . by preempting any local regulations . . . which conflict with its provisions." *Town of Easton*, 982 F.Supp. at 50.

the time of Plaintiff's application, the Tower held antennae for three of Plaintiff's major competitors. Defendants argue that it was in the Board's discretion to conclude that the Tower could hold nothing more. The written record, however, undermines the Board's conclusion. In support of its application for a special permit, Plaintiff submitted a structural report indicating the viability of attaching Plaintiff's antennae to the Tower. The Board conducted no such investigation of its own, nor did it express any articulable reasons for refuting the report's determination. The "substantial evidence" requirement expressly proscribes local government agencies from reaching decisions based on unsubstantiated conclusions. *See Cellular Telephone Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir.1999) (holding that substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); *Town of Easton*, 982 F.Supp. at 52 (ruling that "evidence supporting the Board's denial must show more than generalized concerns"). Defendants' first justification for the Board's decision to deny Plaintiff's special permit accordingly lacks merit.

■ Defendants next argue that the Board's decision was justified by its determination that the Tower was not the "best" site for Plaintiff's antennae, and that a "less offensive" sight would be more suitable. Defendants contend that Plaintiff failed to consider other viable sites in the town. This argument fails, however, for the same reasons that Defendants' first argument fails. Prior to the Board's denial of Plaintiff's application for a special permit, the Board granted special permits to three of Plaintiff's major competitor providers of telecommunications services—

New England Telephone/Southwestern Bell Corp., Omnipoint Communications, and Nextel Communications of the Mid-Atlantic, Inc.—to attach their antennae to the Tower. Other than "overload" concerns—as discussed above—the Board offers no reason why the Tower was an appropriate site for Plaintiff's competitors' antennae, but now is not the "best" site for Plaintiff's antennae. As such, the Board fails to support its assertion with "substantial evidence" that the Tower is not the "best" site for Plaintiff's antennae.[2] Again, to allow local government to deny a telecommunications provider's application for a special permit based on unsubstantiated conclusions would be to frustrate the purpose of the TCA. *See Town of Easton*, 982 F.Supp. at 52.

■ Defendants proffer two final justifications for the Board's determination to deny Plaintiff's special permit: (1) constituent concern for the aesthetic consequences of adding additional antennae to the Tower; and (2) constituent concern for the adverse health consequences of additional antennae on the Tower. Neither of these concerns, however, can properly form a basis of the Board's decision to deny the special permit. "[G]eneralized concerns ... about aesthetic and visual impacts on the neighborhood do not amount to substantial evidence." *Omnipoint Corp. v. Zoning Hearing Bd.*, 20 F.Supp.2d 875, 880 (E.D.Pa.1998). Nor can generalized "health concerns expressed by residents ... constitute substantial evidence." *Town of Oyster Bay*, 166 F.3d at 494–95. *See generally Town of Easton*, 982 F.Supp. at 52. Defendants present no evidence in support of such aesthetic and health justifications other than the testimony of a few residents.

**2.** Relying on *Town of Amherst v. Omnipoint Communications Enter.*, 173 F.3d 9 (1st Cir. 1999), Defendant asserts that Plaintiff, "in order to establish that the Planning Board's denial has prohibited or had 'the effect of prohibiting' the provision of its personal wireless services in the Town ... must establish ... that further reasonable efforts to site its antennae in Edgartown would also be likely to be 'fruitless' and 'a waste of time to even try.'" But Plaintiff does not contend in its motion for a preliminary injunction that the Board has "prohibited" it from providing wireless services. Instead, Plaintiff contends that the Board's denial of its application was "unreasonably discriminatory."

The limited evidence contained in the record, moreover, indicates that the Board actually viewed Plaintiff's antennae configuration as less aesthetically intrusive than its competitors' configurations. Plaintiff proposed to attach new "leg mount" antennae to the Tower to reduce the visual blight of the equipment. The Board apparently was so pleased with the "leg mount" technology that it inquired whether Plaintiff's competitors could change their "triangular arrays" to "leg mounts." For lack of proper "substantial evidence," therefore, the Board's reliance on aesthetic and health concerns is unavailing.

Because Defendants fail to produce "substantial evidence" supporting its denial of Plaintiff's application, Plaintiff demonstrates a likelihood of success on the merits that the Board's denial of Plaintiff's application constituted "unreasonable discrimination." *See Town of Easton*, 982 F.Supp. at 52 (D.Mass.1997) (ruling that the TCA shifts the burden of proof to the government agency that denied the applicant's siting request "rather than burdening the applicant with producing substantial evidence supporting its approval"). The first prong—and most significant prong—of the preliminary injunction analysis, therefore, favors ALLOWING Plaintiff's motion. *See LeBeau v. Spirito*, 703 F.2d 639, 642 (1st Cir.1983) ("[T]he probability of success component has loomed large in cases before this court").

#### B.

The "potential for irreparable harm," "balance of the relevant equities," and "public interest" prongs of the preliminary injunction inquiry also favor allowing Plaintiff's motion for a preliminary injunction. Plaintiff demonstrates a potential for irreparable harm. Every day that Plaintiff's special permit is denied is a day Plaintiff loses against its major competitors, whose antennae presently are attached to the Tower. In today's quickly advancing world of telecommunications services, the costs of delay cannot be understated. The "balance of equities" and "public interest" factors further favor allowing the motion. In contrast to Plaintiff's potential losses, Defendants lose virtually nothing by granting the special permit, other than the effect of prohibiting Plaintiffs construction of its antennae on the Tower. Plaintiff recognizes its obligation to remove its antennae from the Tower if it ultimately loses this case. Finally, it cannot be contested that the addition of Plaintiff to the marketplace will be in the public interest. A basic premise of the TCA is "to increase competition in the telecommunications industry." *BellSouth Mobility, Inc. v. Gwinnett County*, 944 F.Supp. 923, 927 (N.D.Ga.1996).

#### III.

For the foregoing reasons, the court concludes that entry of a preliminary injunction requiring Defendants to issue the special permit and a building permit by January 31, 2000 is appropriate. Plaintiffs motion is ALLOWED.

AN ORDER SHALL ISSUE.

#### ORDER

Plaintiff's motion for entry of a preliminary injunction is ALLOWED. A preliminary injunction is hereby entered directing Defendants to issue the requested special permit and a building permit by January 31, 2000.

IT IS SO ORDERED.