OMNIPOINT HOLDINGS,
INC., Plaintiff,

v.

TOWN OF WESTFORD and Westford
Zoning Board of Appeals,
Defendants.

No. CIV.A.01–11244–JLT.

United States District Court,
D. Massachusetts.

June 17, 2002.

Kenneth I. Spigle, Needham, MA, for Plaintiffs.

Elaine M. Lucas, Brackett & Lucas, Worcester, MA, for Defendants.

## MEMORANDUM

TAURO, District Judge.

This case involves a subject well traversed in federal courts: the tension between those attempting to erect wireless communications towers and those fighting to keep such towers out of their own back yards.

On June 19, 2001, Defendants Town of Westford and the Westford Zoning Board of Appeals ("Board") issued a written opinion denying Plaintiff Omnipoint's zoning variance application, which sought permission to construct a 150–foot wireless communications tower at 25 Keyes Road in Westford, Massachusetts. Plaintiff filed suit in this court appealing the Boards's decision and seeking injunctive relief.

At issue are the Parties' Cross–Motions for Summary Judgment.

## BACKGROUND

Plaintiff Omnipoint Holdings, Inc., a subsidiary of Voicestream Wireless, Inc. ("Omnipoint"), is a telecommunications carrier providing wireless communications services in Massachusetts. Omnipoint's services utilize "PCS technology," a system that transmits low-power radio signals between subscribers' mobile telephones and Omnipoint's antennas. These antennas, whether mounted atop buildings, poles, or other structures, transmit the signals to standard telephone lines.[1]

A single group of antennas may serve a particular geographical area, called a "cell." If an individual using a PCS telephone initiates a call in one cell and moves into another cell, the radio signal is "handed off" from the initial cell to the adjacent cell. A gap in antenna coverage in a particular cell may result in the low-power signal being "dropped," and a lost call. Because of the importance of maintaining a seamless network, Omnipoint and other wireless communications providers seek to ensure that each cell is equipped with adequate antenna facilities. The placement of such facilities depends greatly on the par-

---

1. *See* Compl. ¶ 8.

ticular topographical features of a given area.[2]

Plaintiff maintains, and Defendants' expert agrees, that there is a significant gap in coverage in Westford, particularly in the vicinity of Route 40.[3] In early 2000, Omnipoint radio frequency engineers and other employees began investigating locations within the area which could provide the necessary coverage. Scott Heffernan, an Omnipoint radio frequency engineer, concluded that "[b]ased on the drive testing and the computer models which I used to determine and predict radio frequency coverage, ... a tower on the 25 Keyes Road property would fill the coverage gap in this area."[4] The mostly undeveloped 60–acre parcel of land at 25 Keyes Road is located in a "Residential A" zoning district adjacent to a conservation area, and is heavily wooded with a tree canopy of approximately 70 feet.[5]

In addition to the site at 25 Keyes Road, Omnipoint investigated numerous other possibilities. In January and February 2000, Omnipoint contacted the Town Planner and the Town Manager of Westford, seeking information regarding the possibility of leasing town-owned property. In May 2000, Omnipoint representatives attended a Town Water Commission meeting and requested permission to attach antennas to town water tanks, a proposal the Commission denied in a letter dated June 18, 2000.[6]

Omnipoint employees contacted Massachusetts Institute of Technology ("M.I.T.") in May or June 2000, requesting a lease of part of M.I.T.'s Haystack Observatory land in the Westford area. M.I.T. issued a letter on August 16, 2000, denying Omnipoint's request.[7] Omnipoint also attempted to lease space at the town-owned Graniteville Ball Park, but later concluded that the Park would not provide adequate coverage.[8] Finally, Omnipoint investigated a privately owned parcel of land at 49 North Main Street in Westford, owned by Michael Pacella (the "Pacella site"). Again, however, Omnipoint was unable to execute a lease.[9]

On January 16, 2001, Plaintiff filed an application for use variance for the site at 25 Keyes Road with the Westford Zoning Board of Appeals.[10] The application proposed the construction of a 150–feet tall "stealth tower," designed to resemble a large tree. The Board held public hearings regarding the Omnipoint application on February 21, 2001, April 8, 2001, and June 6, 2001. In addition to the voluminous documentary evidence presented to the Board, the Board also heard extensive testimony from Omnipoint engineers and employees, engineers from other wireless providers, the Town's own radio frequency expert, and members of the community.[11]

After the three days of hearings, the Board voted on the application. Four members voted to deny the request for variance, and one member voted to grant it. The Board issued its final written deci-

2. *See id.* at ¶ 9.

3. *See* Pl.'s Mem. in Supp. of Mot. for Summ. J. 2; Board, Decision and Notice of Decision, June 19, 2001 ("Decision") at 3, ¶ 14.

4. Heffernan Aff. ¶ 11.

5. *See* Decision at 2, ¶¶ 2, 4, 6.

6. Jones Aff. ¶¶ 4–5;

7. *See* Jones Aff. ¶ 6; Board Hr'g R. Ex. 40.

8. *See* Heffernan Aff. ¶ 9.

9. *See id.*

10. Board Hr'g. R. Ex. 8.

11. *See* Board Hr'g. R. Ex.'s 1–58; Board Hr'g. Tr.'s ## 1–3.

sion denying the application on June 19, 2001.[12]

Plaintiff filed suit in this court on July 19, 2001. Count I alleges that Defendants' denial of the use variance constituted "effective prohibition" of wireless services, in violation of the Telecommunications Act of 1996 ("TCA");[13] Count II alleges that the Board's decision was not supported by "substantial evidence," in violation of the TCA; and Count III alleges that the denial constituted a civil rights violation under 42 U.S.C. § 1983. Plaintiff seeks injunctive relief, costs, and attorneys' fees.

## DISCUSSION

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[14] Rule 56 mandates summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[15]

The "party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, instead, a trialworthy issue."[16] When considering cross-motions for summary judgment, the "court must consider each motion separately, drawing inferences against each movant in turn."[17]

The Parties' cross-motions are before the court.

### I. The Telecommunications Act of 1996

The TCA "is a deliberate compromise between two competing aims—to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers."[18] In enacting the TCA, Congress and the President sought to balance "America's love affair with the cellular telephone" with the "often unsightly transmission towers that seem to sprout like weeds after a summer rain."[19] Cases arising under the TCA, such as this one, illustrate the difficulty of effectuating the Congressional compromise.[20]

The TCA recognizes that local zoning boards have primary authority over "decisions regarding the placement, construction, and modification of personal wireless service facilities."[21] While, the " 'TCA does not completely preempt the authority of state and local governments to make decisions regarding the placement of wireless communications service facilities,' it

**12.** *See* Decision at 5.

**13.** 47 U.S.C. § 332(c)(7)(B)(iii).

**14.** Fed.R.Civ.P. 56(c).

**15.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**16.** *Blackie v. State*, 75 F.3d 716, 721 (1st Cir.1996) (quotations omitted).

**17.** *Id.*

**18.** *Town of Amherst v. Omnipoint Communications*, 173 F.3d 9, 13 (1st Cir.1999).

**19.** *National Tower v. Frey*, 164 F.Supp.2d 185, 186 (D.Mass.2001) (Stearns, J.).

**20.** *Sprint Spectrum v. Town of Easton*, 982 F.Supp. 47, 49 (D.Mass.1997) (Tauro, J.) (quoting *BellSouth Mobility, Inc. v. Gwinnett County*, 944 F.Supp. 923, 927 (N.D.Ga.1996)).

**21.** 47 U.S.C. § 332(c)(7)(A).

does impose significant limitations on this authority." State and local regulation "shall not unreasonably discriminate among providers of functionally equivalent services" or "prohibit or have the effect of prohibiting the provision of personal wireless services."[22] The TCA further provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."[23] Anyone adversely affected by the final judgment of a local government may "commence an action in any court of competent jurisdiction," and "[t]he court shall hear and decide such action on an expedited basis."[24]

## II. Count I—Effective Prohibition

■ Count I of the Complaint alleges that, "[b]y its decisions, the Zoning Board of Appeals has had the effect of prohibiting the provision of personal wireless services by Omnipoint in portions of Westford and surrounding communities," in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).[25] In analyzing the claim of effective prohibition, this court resolves the issue *de novo*.[26]

■ The "effective prohibition" provision does not require an explicit local policy banning the provision of wireless service. The First Circuit has noted that "some individual decisions could be shown to reflect, or represent, an effective prohibition on personal wireless service."[27] A town zoning authority's denial of an individual permit may establish criteria that carriers are unable to meet. The *Town of Amherst* court explained:

> If the criteria or their administration effectively preclude towers no matter what the carrier does, they may amount to a ban "in effect" even though substantial evidence will almost certainly exist for the denial. In that event, the regulation is unlawful under the statute's "effect" provision.[28]

■ In order to succeed on a claim of effective prohibition, a plaintiff must satisfy a two-prong test. First, a plaintiff "must establish that the Town's zoning policies and decisions result in a significant gap in wireless services within the Town."[29] Second, a plaintiff must carry the heavy burden of showing "from language or circumstances not just that this application has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try."[30]

■ As discussed above, there is no dispute in this case that a "significant gap" existed in Westford in the vicinity of Route 40.[31] In order to assist this court in resolving the motions for summary judgment, the Parties jointly submitted the three volumes of documentary evidence presented to the Board, and the three transcripts from the hearings. After combing through the material, this court is unable to find any evidence whatsoever

22. 47 U.S.C. § 332(c)(7)(B)(i).

23. 47 U.S.C. § 332(c)(7)(B)(iii).

24. 47 U.S.C. § 332(c)(7)(B)(v).

25. Complaint ¶ 23.

26. *See Town of Amherst,* 173 F.3d at 16 n. 7.

27. *Id.* at 14.

28. *Id.* at 14.

29. *Omnipoint v. Lincoln,* 107 F.Supp.2d 108, 118 (D.Mass.2000).

30. *Town of Amherst,* 173 F.3d at 14.

31. *See* Tr. vol. I at 34:16–22.

that a significant gap in coverage did not exist. Indeed, Paragraph 14 of the Board's "Findings" notes that the town radio frequency expert "verified that a gap in coverage exists in the Route 40 area."[32] Plaintiff has therefore satisfied the first prong of the effective prohibition inquiry.

Having satisfied the first prong, Plaintiff must establish that future efforts to fill the gap will be futile. Plaintiff argues that its efforts in investigating and pursuing alternate sites prior to securing a lease at 25 Keyes Road satisfies the second prong. During the hearings, Omnipoint emphasized that it began seeking appropriate property in January 2000, and that it attempted to secure sites including town-owned land, municipal water tanks, a ball park, the M.I.T. Haystack Observatory, and privately owned land.[33]

Defendants disagree, and insist that they are entitled to summary judgment "because the proposed site is not an appropriate one for a tower, even a so-called stealth facility, and because there are more appropriate alternate sites available."[34] Defendants' original position was that there are three such viable alternatives: (1) the "44–acre Town owned Highway parcel," (2) the Pacella property, and (3) Town Water Department locations.[35] In a Joint Statement of Additional Facts, however, the Parties indicated that the Town-owned Highway parcel "is not available for leasing at this time."[36]

Joe Della Selva of Omnipoint testified at the hearings regarding the "Water Department locations," and indicated that Plaintiff conducted a "propagation study ... to determine what kind of coverage it could provide along Route 40, and really, it was redundant coverage."[37] Although on May 14, 2001, the Water Department indicated to the Board that it encourages "communications companies to propose installation of cellular towers on select Water Department property," subject to "a number of parameters,"[38] the Department's letter to Omnipoint dated July 18, 2000, indicates that "the Westford Board of Water Commissioners is not interested in engaging in a lease agreement with Omnipoint."[39] There is no indication in the record that the Water Department ever expressed even a slight willingness to lease land to Omnipoint during year 2000, and it only did so on the eve of the final Board hearing. Because the coverage was inadequate and because the location would also require a variance, the location was not feasible.[40]

In support of the "alternative sites" argument, Defendants submit the affidavit of Michael Pacella, Jr. In the affidavit, filed with this court on March 8, 2002, Pacella asserts that he "would be extremely interested in leasing the property to a party for the construction of a telecommunication tower."[41] This recent assertion is contrary to the weight of testimony provided to the Board. Plaintiff repeatedly ad-

**32.** Decision at 3, ¶ 14.

**33.** *See* Tr. vol. III at 21:9—27:17, 145:23–24.

**34.** Mem. of Law in Supp. of Defs.' Mot for Summ. J. 2.

**35.** *Id.* at 3.

**36.** Joint Statement of Additional Facts [Docket # 32] 1.

**37.** Tr. vol. III at 21:16–19.

**38.** Board Hr'g R. Ex. 41 (May 14, 2001 Water Department Letter).

**39.** Board Hr'g R. Ex. 41 (July 18, 2000 Water Department Letter).

**40.** *See id.* at 22:4–9.

**41.** Pacella Aff. ¶ 4.

dressed the Pacella property at each of the three hearings before the Board. On February 21, 2001, Plaintiff told the Board that "[w]e looked at the Pacella property . . . and we never was [sic] able to seal a deal on a lease. . . ." [42] On April 18, 2001, Mr. Della Selva reiterated that "a lease arrangement [with Pacella] could not be concluded," and that because there was "some bickering amongst the agents there, . . . they just decided not to be involved." [43] At the final hearing on June 6, 2001, Plaintiff reminded the Board that the Pacella site "would require a use variance," and that they "could not come to an agreement with us and between themselves [sic] as to how to proceed."

At no point during the three hearings did the Town present any evidence that Omnipoint had been anything but diligent in attempting to secure a lease with Mr. Pacella. Mr. Pacella's March 7, 2002 assertion that he "would be extremely interested in leasing the property to a party for the construction of a telecommunication tower" was never communicated to Plaintiff or Defendants at the hearings, and it is too late in the day to do so now. The evidence presented to the Board one year ago was uncontroverted: the Pacella property was unavailable for leasing.

As Judge Stearns noted in *National Tower, LLC v. Frey,*[44] "[c]onfronted with Omnipoint's evidence that no alternative site exists, the Board's obligation was either to show that Omnipoint's evidence was factually insufficient, or to come forward with evidence of its own demonstrating a trialworthy dispute." [45] Here, as in *Frey,* the Board did neither.

Even assuming, however, that the Board was able to present viable alternatives, or that Pacella's recent revelation creates a triable issue of fact, Plaintiff has still demonstrated "such fixed hostility by the Board that one can conclude that further applications would be useless." [46] The Board noted in its Decision in this case that Omnipoint "has not shown that a literal enforcement of the provisions of the zoning bylaw would involve such substantial hardship because there are other uses for the land such as residential development." [47] During the course of the hearings, members of the Board seized upon this "other uses" criteria. Because there is another use for the site at 25 Keyes Road, namely residential development, Board member Ellen Douchette indicated that "I'll never be convinced there's a hardship for that." [48]

After the public portion of the hearing was closed on June 6, 2001, the Board continued to meet in order to decide the matter, with counsel for Omnipoint present. Board member Sam Frank indicated that "the use variance as far as the town bylaw goes is deficient because there is clearly another use for this parcel . . . ." [49] Ellen Douchette again indicated that "clearly, this is not a place for this. I mean, it's a residential neighborhood." [50] She further insisted that she was "not in favor of this in any respect . . . . It's nasty.

**42.** Tr. vol. I at 45:19–21.

**43.** Tr. vol. II at 52:21–23, 78:11–14.

**44.** 164 F.Supp.2d. 185 (D.Mass.2001).

**45.** *Id.* at 190.

**46.** *Town of Amherst,* 173 F.3d at 14.

**47.** Decision at 4, ¶ 1.b. *See* Westford Zoning Bylaw ch. 173–29.B(2).

**48.** Tr. vol. III at 44:21–22.

**49.** *Id.* at 160:11–13.

**50.** *Id.* at 166:11–13.

I don't want to look at it." [51]

Plaintiff has shown that even if it were able to locate a site that would provide ample coverage to fill the gap around Route 40, attempting to secure a variance from the Board would be a futile exercise. This showing is "sufficient to support an allegation that the zoning board's permit denial effectively prohibits personal wireless services in the area," [52] and Plaintiff is entitled to summary judgment.

Accordingly, Plaintiff's Motion for Summary Judgment is ALLOWED as to Count I, and Defendants' Motion for Summary Judgment is DENIED as to Count I. Having granted Plaintiff summary judgment on the grounds of effective prohibition, this court will not address Plaintiff's substantial evidence claim.

### III. § 1983

■ In Count III of the Complaint, Plaintiff alleges that, "[i]n denying Omnipoint's application for zoning relief, the Defendants acted under color of law, and subjected Omnipoint to the deprivation of rights, privileges, or immunities secured by the laws of the United States, particularly [the TCA]." [53] Plaintiff thus seeks attorneys' fees and costs.

Defendants insist that "there are no grounds for a civil rights claim because there is no violation of a federal right and the Act itself provides a sufficient and comprehensive remedy." [54] There is support for Defendants' argument. The Court of Appeals for the Third Circuit recently held that "the TCA implicitly precludes an action under § 1983 by creating a comprehensive remedial scheme that furnishes private judicial remedies." [55] The Eleventh Circuit reached a contrary conclusion in *AT&T Wireless PCS, Inc. v. City of Atlanta,*[56] a decision that was later vacated on other grounds. No other federal court of appeals, including the First Circuit, has addressed the issue, and "[t]he courts of this District have split as to the availability of Section 1983 relief from a violation of the TCA." [57]

In *Sprint Spectrum v. Town of Easton,*[58] however, this court held that a § 1983 remedy was available to a Plaintiff whose rights were violated under the TCA. The court's reasoning in that case was as follows:

The TCA does not implicitly or explicitly foreclose § 1983 suits. More particularly, the TCA does not provide a comprehensive enforcement scheme intended to supplant a § 1983 remedy. In addition, the TCA creates substantive rights by providing that "[a]ny person adversely affected by any final action ... by a ... local government or any instrumentality thereof ... may ... commence action in any court of competent jurisdiction." Given the foregoing, as well as the fact that enforcement of Plaintiff's rights under the

---

**51.** *Id.* at 167:11–15.

**52.** *Southwestern Bell Mobile Systems, Inc. v. Todd,* 244 F.3d 51, 63 (1st Cir.2001).

**53.** Complaint ¶ 30.

**54.** Defs.' Mem. of Law in Supp. of Mot. for Summ. J. 9.

**55.** *Nextel Partners, Inc. v. Kingston Township,* 286 F.3d 687, 694 (3d Cir.2002).

**56.** 210 F.3d 1322 (11th Cir.2000), *vacated pending reh'g en banc,* 260 F.3d 1320 (11th Cir.), *and appeal dismissed per stipulation,* 264 F.3d 1314 (11th Cir.2001).

**57.** *Nextel Communications v. Town of Randolph, et. al.,* 193 F.Supp.2d 311, 322 (D.Mass.2002) (Saris, J.) (listing cases). W

**58.** 982 F.Supp. 47 (D.Mass.1997) (Tauro, C.J.).

TCA through a § 1983 action does not "strain judicial competence," a § 1983 remedy is available in this instance.[59]

Because the *Sprint Spectrum* analysis is equally applicable in the present case, Plaintiff's Motion for Summary Judgment on Count III is ALLOWED, and Defendants' Motion for Summary Judgment on Count III is DENIED.

### CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment is ALLOWED as to Counts I and III, and DENIED as to Count II. Defendants' Motion for Summary Judgment is DENIED.

AN ORDER WILL ISSUE.

---

**59.** *Id.* at 53 (citations omitted).