Randall PATTERSON, et al., Plaintiffs,

v.

OMNIPOINT COMMUNICATIONS, INC., et al., Defendants.

and

Randall Patterson, et al., Plaintiffs,

v.

Zoning Board of Appeals of the Town of Scituate, et al., Defendants.

Civil Action Nos. 99–CV–12336–JLT, 00–CV–10561–JLT.

United States District Court, D. Massachusetts.

Nov. 21, 2000.

Edward J. Collins, Cambridge, MA, for Plaintiffs.

Kenneth I. Spigle, Rosenberg, Freedman & Goldstein, Newton, MA, Barbara J.

Saint Andre, Kopelman and Paige, P.C., Boston, MA, for Defendants.

## MEMORANDUM

TAURO, District Judge.

### I. Introduction

This Memorandum concerns two related actions filed by the same Plaintiffs, ten residents from the neighboring towns of Scituate and Cohasset. The permitting and construction of a wireless communications relay tower ("relay tower") in Scituate, near that town's border with Cohasset, provides the backdrop to both cases. The issue presented is whether a local zoning board must follow state and local procedures for issuing a special permit when granting that permit pursuant to a federal court order. Federal question jurisdiction rests on the Telecommunications Act of 1996 ("TCA"), 47 U.S.C. §§ 151 et seq.[1]

In the first action ("*Patterson 1*"), Plaintiffs sued six members of the Scituate Planning Board and four corporate Defendants, alleging procedural violations of the Massachusetts Zoning Act ("Zoning Act"), Mass. Gen. Laws ch. 40A, §§ 1–17. The corporate Defendants are Omnipoint Communications Inc. and its successor-in-interest, Omnipoint Communications MB, OPS, LLC (collectively, "Omnipoint"[2]), the wireless communication providers; and King K. Corporation, which owns the land where Defendant Tower Ventures ("Tower") built the relay tower for Omnipoint. Plaintiffs brought the second action ("*Patterson 2*") against three members of Scituate's Zoning Board of Appeals, the Building Inspector, and the same corporate Defendants. Alleging the same Zoning Act violations as in *Patterson 1*, they added a 42 U.S.C. § 1983 claim against the Board of Appeals and the Building Inspector, and a Mass. Gen. Laws ch. 93A claim against an unspecified defendant.

### II. Background

On February 22, 1999, Omnipoint and Tower applied to the Planning Board for a special permit to build a relay tower. In accordance with the Zoning Act's procedural requirements, the Planning Board gave notice to Scituate and Cohasset "parties in interest,"[3] developed factual findings, and held public hearings. *See* Mass. Gen. Laws ch. 40A, §§ 9, 11, 16. On June 11, 1999, the Planning Board officially denied the application.[4] In a case heard by this court, Omnipoint and Tower then

---

1. *See* 47 U.S.C. § 332(c)(7)(B)(v) ("Any person adversely affected by any final action ... [of] a State or local government ... that is inconsistent with this subparagraph may ... commence an action in any court of competent jurisdiction."). Here, federal jurisdiction is proper even though Plaintiffs assert violations of state, not federal law. *See City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) ("Even though state law creates [a party's] cause of action, its case might still 'arise under' the laws of the United States if a well pleaded complaint established that right to relief under state law requires resolution of a substantial question of federal law.") (citations omitted). The court assumes, *arguendo*, that Plaintiffs have standing as "person[s] adversely affected," though they do not allege that Defendants' acts were "inconsistent" with 47 U.S.C. § 332(c)(7)(B).

2. Plaintiffs argue that the companies' distinct legal identities gave rise to procedural anomalies in the application. None of these alleged anomalies, however, rise to the level of an actionable defect. *See Roberts v. Southwestern Bell Mobile Systems, Inc.*, 429 Mass. 478, 709 N.E.2d 798, 808 (1999) ("[N]ot every failure to precisely follow the procedural requirements of [The Zoning Act] is a jurisdictional defect.") (citations omitted). Nor do Plaintiffs supply specific factual assertions that the two companies engaged in any corporate shell game. For practical purposes, the two companies are effectively one and the court will treat them as such.

3. "Parties in interest" are the petitioner, and property owners of land within 300 feet of the locus. *See* Mass. Gen. Laws ch. 40A, § 11.

4. The Planning Board voted 3–1 to approve, but the Zoning Act requires at least four votes in a six-member Planning Board. *See* Mass. Gen. Laws ch. 40A, § 9.

sued the Planning Board, alleging that the denial violated the TCA.[5] *See Tower Ventures v. Warner,* No. 99–CV–11422–JLT (D.Mass. Sept. 28, 1999).

On September 28, 1999, pursuant to an Agreement for Judgment between the Parties and its own factual findings, the court entered judgment for Omnipoint and Tower on Count I, finding that the denial "lacked substantial evidence," in violation of the TCA. *See Tower Ventures,* slip op. at 1–2.[6] The court ordered the Planning Board to issue the special permit and ordered the appropriate municipal agent to issue a building permit, in accordance with the conditions set forth in the initial application. *See id.* On October 15, 1999, the Planning Board issued the special permit to Omnipoint and Tower, but did not require a new application, provide a new round of notice, develop findings of fact, or hold another public hearing, as required by the Zoning Act. *See* Mass. Gen. Laws ch. 40A, § 16.

Plaintiffs filed the *Patterson 1* suit on November 8, 1999. After the Building Inspector issued the building permit in December 1999, some of the Plaintiffs appealed to the Zoning Board of Appeals. The Board of Appeals held a public hearing on February 24, 2000, and voted to uphold the issuance of the permits on March 3, 2000. Omnipoint and Tower then built the relay tower within the 20–day window of appeal prescribed by Mass. Gen. Laws ch. 40A, § 11. On March 23, 2000, Plaintiffs filed the *Patterson 2* suit.

In *Patterson 1,* Plaintiffs allege that the Planning Board exceeded its legal authority by entering into the Agreement for Judgment and by issuing the special per-

mit, without following the Zoning Act's procedural requirements for reversing a previous denial of a special permit. *See* Mass. Gen. Laws ch. 40A, §§ 9, 11, 16. In *Patterson 2,* Plaintiffs allege that the Building Inspector exceeded his authority because he issued the building permit based on a procedurally-defective special permit, and did so while the issuance of that permit remained in litigation (*Patterson 1*). *See id.* Plaintiffs further allege that the corporate Defendants violated the Zoning Act by building the tower within the twenty-day appeal period following the Board of Appeal's March 3, 2000 decision. *See* Mass. Gen. Laws ch. 40A, § 11. Finally, Plaintiffs allege that the Board of Appeals violated 42 U.S.C. § 1983 by upholding the special permit in reckless disregard of the Plaintiffs' due process rights.

In *Patterson 1,* Plaintiffs request this court to annual and vacate the issuance of the special permit and the building permit. In *Patterson 2,* Plaintiffs seek an injunction ordering the dismantling of the tower, and the full extent of damages, costs and fees allowed by 42 U.S.C. § 1983 and Mass. Gen. Laws ch. 93A.

Both the corporate and municipal Defendants moved to dismiss all claims from *Patterson 1* and *Patterson 2.* Plaintiffs opposed the Motions to Dismiss *Patterson 1,* but did not oppose municipal Defendants' Motion to Dismiss the § 1983 claim or the corporate Defendants' Motion to Dismiss the Mass. Gen. Laws. ch. 93A claim from *Patterson 2.* In the interest of judicial economy, and as agreed to by all parties at the October 19, 2000 hearing, the court consolidated Defendants' Motions to Dismiss from *Patterson 1* and *Patterson 2.*[7]

---

**5.** Counts I–III alleged that the denial "lacked substantial evidence," "unreasonably discriminated" against the Plaintiffs, and had the effect of "prohibiting wireless service," in violation of 47 U.S.C. § 332(C)(7)(b)(i)-(iii). Count IV alleged violations of due process rights under 42 U.S.C. § 1983, and Count V charged an abuse of discretion under Mass. Gen. Laws, ch. 40A, § 17. (Compl.¶¶ 30–47.)

**6.** The court dismissed without prejudice Counts II and III, and dismissed Counts IV and V with prejudice.

**7.** The court declined to consolidate the motions from the related case of *Chief Justice Cushing Hwy v. Limbacher,* No. 00–CV–10174–JLT (D. Mass. filed Jan. 10, 2000). There, an immediate abutter to the relay tower brought suit pursuant to the Zoning Act, alleging diminution of value—a claim not

## III. Analysis

### A. Standard of Review

■ When deciding a defendant's motion to dismiss, a court assumes as true the plaintiff's "well-pleaded factual averments" and favors the plaintiff with "every reasonable inference." *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir. 1990). A court, however, need not accept the plaintiff's "bald assertions" or "unsupportable conclusions." *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir.1998). If it clearly appears that a plaintiff could not recover on any viable theory, dismissal is proper. *Conley v. Gibson*, 355 U.S. 41, 45, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### B. Zoning Act Violations and Federal Preemption

Plaintiffs allege that the Planning Board, the Building Inspector and the Board of Appeals exceeded their authority by issuing and affirming the special permit and the building permit without following the Zoning Act's procedural requirements. Defendants move to dismiss on claim preclusion grounds, and because both suits amount to impermissible collateral attacks on a valid and final judgment from the *Tower Ventures* action, i.e., the court order requiring the issuance of the special permit and the building permit. The court agrees that Plaintiffs' suits represent impermissible collateral attacks,[8] and finds that the TCA preempts the Zoning Act's procedural requirements as applied here.

### 1. The Telecommunications Act of 1996

Congress enacted the TCA "in order to provide ... [a] framework designed to accelerate rapidly private sector deployment of advanced telecommunications ... services to all Americans." *Omnipoint Communications MB Operations, LLC v. Town of Lincoln*, 107 F.Supp.2d 108, 114 (D.Mass.2000) (quoting *Paging, Inc. v. Board of Zoning Appeals for County of Montgomery*, 957 F.Supp. 805, 807 (W.D.Va.1997)); See also H.R. Conf. Rep. No. 104–458, 104th Congress, 2d Sess. at 206 (1996).[9] It represents "a deliberate compromise between two competing aims—to facilitate nationally the growth of wireless telephone service and to maintain substantial local control of siting of towers." *Town of Amherst, New Hampshire v. Omnipoint*, 173 F.3d 9, 13 (1st Cir. 1999). Nonetheless, the TCA "significantly limits the ability of state and local authorities to apply zoning regulations to wireless telecommunications." *Telecorp Realty, LLC v. Town of Edgartown*, 81 F.Supp.2d 257, 259 (D.Mass.2000) (citing H.R. Conf. Rep. No. 104–458 at 207–08). The TCA limits state and local zoning control in three pertinent ways: 1) states shall not "prohibit or have the effect of prohibiting" services; 2) states shall act upon applications "within a reasonable period of time" and support all denials "in writing ... by substantial evidence;" and 3) a court of competent jurisdiction shall expeditiously review and decide upon state or local actions inconsistent with the above

---

raised by the Plaintiffs in *Patterson 1* or *Patterson 2*. In addition, the *Chief Justice Cushing Hwy* Plaintiff did not attend the October 19, 2000 hearing, and, therefore, did not consent to consolidation.

**8.** The court declines to dismiss on claim preclusion grounds because insufficient identicality exists between the cause of action in *Tower Ventures* and that of the present cases. In *Tower Ventures*, the present corporate Defendants challenged the municipal Defendants' denial of the permit. Here, however, Plaintiffs challenge Defendants' actions after the *Tower Ventures* order. *See Moore's Federal*

*Practice,* ¶ 131.22[1] (3rd ed. 1999) ("[C]laim preclusion does not apply when new facts establish independent grounds for a claim, even if the new claims utilize the same legal theories or seek the same damages.").

**9.** "[Congress enacted the TCA] to provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services ...." H.R. Conf. Rep. No. 104–458 at 206.

limitations. 47 U.S.C. § 332(c)(7)(B)(i)-(iii),(v).

### 2. Preemption

■ An act of Congress rooted in a constitutionally enumerated power preempts conflicting state laws or regulations. *See Strahan v. Coxe*, 127 F.3d 155, 167–68 (1st Cir.1997). Preemption is triggered by congressional intent or when a state law "actually conflicts" with a federal statute. *See Hillsborough County v. Automated Medical Lab.*, 471 U.S. 707, 712–13, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). Courts may infer congressional intent where, *inter alia*, it is implicit in the act, where the act involves a dominant federal interest, or where the application of state policies provides a result inconsistent with the objective of the federal statute. *See id.* at 713, 105 S.Ct. 2371. A state law "actually conflicts" with a federal statute where compliance with both is a physical impossibility, or when the state law "stands as an obstacle to the accomplishment of the full purposes and objectives" of the federal statute. *Id.* (citation omitted).

### 3. Applying the Telecommunications Act

■ Developing case law holds that the TCA preempts state and local laws when the application of those laws effectively violates one of the TCA's enumerated limitations on state zoning authority. *See Amherst*, 173 F.3d at 16–17 (citing H.R. Conf. Rep. No. 104–458 at 207–08); *Sprint Spectrum L.P. v. Town of Easton*, 982 F.Supp. 47, 50 (D.Mass.1997). Courts from this and other circuits have held that the appropriate remedy for a violation of the TCA is a mandatory injunction ordering the issuance of a special permit. *See Omnipoint Communications MB Operations, LLC*, 107 F.Supp.2d at 120–21; *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2nd Cir.1999) (and cases cited therein). The rationale sustaining this injunctive relief is to "stop local authorities from keeping wireless providers tied up in the hearing process," as that would frustrate the TCA's clear mandate to expeditiously review and remedy TCA violations. *Sprint Spectrum L.P.*, 982 F.Supp. at 50, 52 (quoting *Westel–Milwaukee Co. v. Walworth County Park and Planning Comm'n*, 205 Wis.2d 244, 556 N.W.2d 107, 110 (1996)).

### 4. The Federal Telecommunication Act's Preemption of The Massachusetts Zoning Act's Procedural Requirements as applied in *Patterson 1* and *Patterson 2*

Plaintiffs contend that the Planning Board should have complied with the Zoning Act by conducting more public hearings, both before it agreed to settle the *Tower Ventures* suit and after the court ordered the issuance of the special permit. The court disagrees. Requiring a zoning board to follow procedural requirements designed to make a decision already made by a valid judicial order would not only frustrate the purposes of the TCA, but also force local zoning boards to choose between disobeying a court order and engaging in a never-ending loop of litigation with dissatisfied residents, all for the sake of a procedural exercise in futility.

■ First, Plaintiffs contend that the Planning Board should have held another public hearing prior to settlement. This argument has no merit. Plaintiffs had their opportunity to provide input during the three public hearings held in March, April and May of 1999. Plaintiffs do not allege that the Planning Board failed to consider this input when it conceded that the initial denial lacked the substantial evidence foundation required by the TCA. Nor do they allege that the special permit or building permit violated the conditions for the tower design set forth in the *Tower Ventures* Judgment.

As a practical matter, allowing individual residents to sue their zoning board for settling a TCA suit without first consulting those residents would effectively preclude

settlement of TCA litigation as an option. If a zoning board recognizes that a reviewing court will likely find its actions violative of the TCA, it behooves that board to settle with the plaintiff company on the most favorable terms possible; rather than spend more on litigation, with the potential to receive less favorable terms from a judgment. The First Circuit recognized this when it encouraged settlement between wireless providers and zoning boards. *See Amherst,* 173 F.3d at 16–17 ("[I]t is in the common interest of [zoning boards] and [telecommunications companies] to find ways to permit the siting of towers in a way most congenial to local zoning.").

■ Plaintiffs next argue that the Zoning Act required the Planning Board to convene a second round of public hearings even after the court ordered the issuance of the special permit. But, more hearings would have been futile. *See Brehmer v. Wellfleet,* No. 99–CV–11169–RGS, slip op. at 2 (D.Mass. Jan. 1, 2000) ("[I]t would be inappropriate and, in fact, a waste of time and energy to order a Planning Board to reconvene a process when the appropriate remedy for a violation of the TCA, in fact, is injunctive relief by way of a written order.").

A recent case out of the Southern District of New York closely resembles the cases here and supports the decision in *Brehmer. See Lucas v. Planning Bd. of Town of LaGrange,* 7 F.Supp.2d 310 (S.D.N.Y.1998). In *Lucas,* the zoning board initially denied a permit to build a tower. The applicant then sued the zoning board for TCA violations. After the parties entered into a consent judgment, the court ordered the issuance of the permit. The town residents subsequently challenged the validity of the permit. The court in *Lucas* recognized that allowing the subsequent challenge to proceed "would return [the parties] to the hearing process so that all could jump through the various costly and dilatory hoops . . . to frustrate the clear mandates of the Telecommunications Act." *Id.* at 321–22.

Here, federal preemption of the zoning procedures is proper. Congress enacted the TCA pursuant to its power to regulate interstate commerce, specified limits on local zoning boards, and provided for judicial review as an expeditious means to remedy violations. Moreover, case law supports injunctive relief in the form of an order to issue a special permit. Forcing the Planning Board to open up to public debate the issue of whether to obey a judicial order, therefore, would "stand as an obstacle to the full accomplishment" of judicial remedy as an expeditious response to a TCA violation.[10]

## C. Constitutional claims

In *Patterson 1,* Plaintiffs assert a litany of federal and state constitutional and procedural violations, among them violations of the Tenth and Fifth Amendments.[11]

10. As Defendants point out, dismissal would be proper even under state law. In their Complaints, Plaintiffs neither assert status as abutters nor directly suffer from an infringement of a legal right. Plaintiffs, therefore, do not have standing as "aggrieved persons," as required under state law. *See* Mass. Gen. Laws ch. 40A, § 17; *Valcourt v. Zoning Bd. of Appeals of Swansea,* 48 Mass.App.Ct. 124, 718 N.E.2d 389, 392 (1999). Nor can Plaintiffs sustain a claim that the municipal Defendants "exceeded [their] authority." *See* Mass. Gen. Laws ch. 40, § 17. The decision to comply with the *Tower Ventures* order was not unreasonable, nor based on "legally untenable grounds." *See Roberts,* 709 N.E.2d at 804 (finding unreasonableness and legally untenable grounds as standard for exceeding authority). Moreover, the Zoning Act enables courts to order the issuance of permits "as justice and equity require." *See* Mass. Gen. Laws ch. 40, § 17; *Framingham Clinic, Inc. v. Zoning Bd. of Appeals of Framingham,* 382 Mass. 283, 415 N.E.2d 840, 848–50 (1981). Finally, "where the public right has been litigated and the public officials are bound . . . [its] citizens are also bound." *Morganelli v. Building Inspector of Canton,* 7 Mass.App.Ct. 475, 388 N.E.2d 708, 715 (1979).

11. The *Patterson 1* Complaint states: "[T]he Planning Board's refusal and failure to hold a public hearing . . . denied the citizens . . . of their rights under the Zoning Act, the Admin-

Plaintiffs, however, provide neither enough well-pleaded factual averments nor sufficient legal argumentation for this court to analyze a discernable claim. This alone justifies dismissal. "[I]t is not enough merely to mention a possible argument in the most skeletal way, [and leave] the court to do counsel's work ...." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990).

■ Even if Plaintiffs stated cognizable Tenth and Fifth Amendment claims, both would lack merit. Plaintiffs appear to argue that vesting special permit-granting authority in a federal judge impermissibly invades upon state and local zoning authority, and encourages judicially-sanctioned deal-making between zoning boards and wireless communications providers that deprives individual residents of their procedural due process rights.

The Tenth Amendment states that "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. The Supreme Court interpreted the Tenth Amendment to mean that "the States unquestionably do retain a significant measure of sovereign authority ... to the extent that the Constitution has not divested them of their original powers and transferred those powers to the Federal Government." *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 549, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Where Congress acts pursuant to its Commerce Clause powers, however, the resulting law becomes "the supreme Law of the Land." U.S. Const. art. VI, cl. 2; *See Strahan*, 127 F.3d at 167.

Congress enacted the TCA pursuant to its power to regulate interstate commerce, *see* 47 U.S.C. § 151, and made its intent to preempt certain areas of local zoning con-

trol clear and manifest in the TCA's specific limitations on state zoning powers. *See* 47 U.S.C. § 332(c)(7)(B). Moreover, the First Circuit held that a District Court's order crafted to bring a state back into compliance with a preemptive federal statute does not violate the Tenth Amendment. *See Strahan*, 127 F.3d at 164, 170.

■ In respect to a potential Fifth Amendment violation, Plaintiffs do not allege a state-protected property interest upon which to attach a procedural due process claim. Plaintiffs cannot claim that an aesthetically pleasing view constitutes an "individual entitlement, grounded in state law [that] cannot be removed except for cause." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

### D. 42 U.S.C. § 1983 and Mass. Gen. Laws ch. 93A claims

In *Patterson 2*, Plaintiffs lodged claims under 42 U.S.C. § 1983 and Mass. Gen. Laws ch. 93A, but did not oppose Defendants' Motions to Dismiss these claims in pleadings or at the hearing. For the reasons set forth in Defendants' memoranda, these claims also lack merit.

■ The municipal Defendants correctly point out that zoning disputes do not give rise to a cause of action under § 1983, absent a specific allegation of a violation of a federal or constitutional right. *See e.g., Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir.1982) ("[I]t is not enough simply to give ... constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983."). In *Patterson 2*, Plaintiffs only specifically allege that the Board of Appeals and the Building Inspector acted in excess of their authority under the Zoning Act. Plaintiffs,

istrative Procedure Act, the Environmental Protection Act, the first, fifth and tenth amendments to the Constitution of the United States, Article IV of the Declaration of Rights

of the Constitution of the Commonwealth of Massachusetts, and Articles XCVII and CVI of the Articles of Amendment to the Constitution of the Commonwealth." (Compl.¶ 39.)

therefore, fail to state a claim under 42 U.S.C. § 1983. *See* Fed.R.Civ.P. 12(b)(6).

With respect to Plaintiffs' ch. 93A claim in *Patterson 2,* the Complaint does not specify any particular plaintiff or defendant. Furthermore, Plaintiffs do not allege particular material facts that would sustain the two essential elements of a ch. 93A claim—an unfair or deceptive act by Defendant, and Plaintiffs' loss of money or property. *See Arthur D. Little, Inc. v. Dooyang Corp.,* 147 F.3d 47, 54–57 (1st Cir.1998). Plaintiffs' ch. 93A allegation, therefore, also fails to state a claim. *See* Fed.R.Civ.P. 12(b)(6).

## IV. Conclusion

For the foregoing reasons, corporate Defendants' and municipal Defendants' Motions to Dismiss Plaintiffs' claims in *Patterson 1* and *Patterson 2* are ALLOWED. Two orders will issue, one for each case.