# United States Court of Appeals
## For the First Circuit

No. 99-2185

BETHIA BREHMER, ET AL.,

Plaintiffs, Appellants,

v.

PLANNING BOARD OF THE TOWN OF WELLFLEET;
OMNIPOINT COMMUNICATIONS, INC., ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Selya, Circuit Judge,
Stahl, Circuit Judge,
and Lisi,* District Judge.

Edward J. Collins for appellant.
Patrick J. O'Toole, Jr., with whom Craig M. Tateronis, Richard W. Holtz, and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC, were on brief, for appellees.

February 6, 2001

**STAHL, <u>Circuit Judge</u>.** A group of citizens from Wellfleet, Massachusetts, seeking to undo their town Planning Board's award of a special zoning permit authorizing construction of a wireless telecommunications tower in the steeple of an historic church, sued the Planning Board and the permit recipient, Omnipoint Communications, Inc. The citizens' group claimed that the issuance of the permit, an action that the Planning Board was obliged to perform under a consent judgment for its earlier violation of the federal Telecommunications Act ("TCA" or "Act"), was unlawful because it failed to follow the procedural strictures of Massachusetts zoning law. The district court disagreed and granted defendants' motion for summary judgment, finding that the permit had been properly issued and that plaintiffs had not demonstrated standing under Massachusetts law. The plaintiffs below appeal from that judgment. We affirm.

## I. Background

In May 1998, Omnipoint[1] submitted a formal application to the Planning Board of Wellfleet, Massachusetts ("Planning

---

[1]As noted in Part III, <u>infra</u>, several entities of "Omnipoint" have been involved in the various stages of this dispute -- a fact whose legal significance is a point of contention between the parties in this appeal. For the sake of clarity, we refer to the collective entities as "Omnipoint" throughout the opinion, and address the ramifications of Omnipoint's corporate structure in Part III, <u>infra</u>.

Board" or "Board") for a special permit to install wireless telecommunications equipment inside the steeple of the First Congregational Church of Wellfleet. This location was suggested by the Planning Board during initial consultations as an alternative to the nearby site that Omnipoint had initially proposed, and was worked out with the church's trustees in a site-lease agreement. After the formal request was submitted, the Planning Board held four hearings on the issue. During the pendency of the permit application, however, a measure of public opposition grew to the plan to locate the equipment inside the church steeple. At the final hearing on October 5, 1998, the Planning Board put the permit application to a vote. Although the five members of the Board unanimously concluded that Omnipoint had satisfied all criteria of the town's zoning bylaws, three members nonetheless voted against issuance of the permit. Two of the three Planning Board members voting "no" explained in written statements that their decisions were largely based on concerns about the potential health effects of the telecommunications facility.

On November 4, 1998, Omnipoint sued the Planning Board in federal district court under 47 U.S.C. § 332(c)(7)(B)(v) as a party "adversely affected by a[] final action . . . by a State or local government" acting to regulate personal wireless

service facilities. It contended that the Board impermissibly relied on the potential environmental effects of the telecommunications tower as a reason for rejecting the permit application under the TCA. See id. § 332(c)(7)(B)(iv) (prohibiting state and local governments from regulating wireless telecommunications facilities "on the basis of the environmental effects of radio frequency emissions" provided that those facilities comply with pertinent federal regulations). Omnipoint also sought damages arising from the permit denial under 42 U.S.C. § 1983. Soon thereafter, Omnipoint and the Planning Board entered into publicly disclosed settlement negotiations.[2] The parties eventually settled their differences, with Omnipoint agreeing to abandon its claim for damages, to perform environmental testing on the telecommunications equipment, and to place warning signs in the vicinity of the site, in consideration of the Planning Board's pledge to issue the previously withheld special permit. This agreement was memorialized in a consent judgment entered by the district court on February 5, 1999. On March 24, 1999, the Planning Board issued the special permit as promised.

---

[2]At least three of the appellants in this case lodged a formal protest against the town's decision to negotiate a settlement, and subsequently demanded a right to participate in the negotiations once commenced, but none formally intervened in the suit brought by Omnipoint.

Dissatisfied with this course of events, a group of Wellfleet citizens sued the Planning Board and Omnipoint in Barnstable Superior Court on April 14, 1999, seeking to have the federal consent judgment set aside as unlawful. Plaintiffs contended that the Planning Board, in issuing the special permit pursuant to the consent agreement, violated state zoning law by granting a previously denied special permit in the absence of public notice and hearing. Mass. Gen. Laws ch. 40A, §§ 9, 11. Plaintiffs also claimed that Omnipoint had violated sundry provisions of Wellfleet's zoning regulations, and had disregarded procedures mandated by the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4335, and Section 106 of the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470f. Omnipoint successfully removed the case to federal district court based on the substantial issues of federal law implicated by plaintiffs' complaint, i.e., the preemptive effect of the TCA and the validity of the consent judgment that had been issued by the district court. See City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 164 (1997).

By May 24, 1999, Omnipoint had secured the historic-preservation and building permits that it needed to begin construction of the tower. Within hours of commencing work on the project on June 2, however, an emergency motion for a

-6-

temporary restraining order was filed by the Wellfleet citizens' group. On June 4, the district court granted the TRO conditioned on plaintiffs' posting of a $50,000 bond. The TRO blocked further work on the installation until the hearing on plaintiffs' motion for a preliminary injunction in the zoning suit, scheduled to occur one week later. Because plaintiffs failed to meet the $50,000 bond requirement imposed by the court, the TRO automatically expired. This left Omnipoint free to construct the telecommunications facility in the church steeple, a task it completed within one week.

On June 11, 1999, the district court denied plaintiffs' motion for a preliminary injunction and invited the parties' motions for summary judgment. At a subsequent hearing on August 4, 1999, the district court informed the parties that it would grant Omnipoint's motion for summary judgment. In so ruling, the court reasoned that plaintiffs had not established their status as "aggrieved persons" under Massachusetts law, and hence had no standing to bring suit. Alternately, the district court held that Massachusetts zoning law did not provide relief to plaintiffs under these circumstances. The court found that since the Planning Board had acknowledged that its earlier denial of the special permit violated the TCA, "it would be inappropriate and, in fact, a waste of time and energy to order

a Planning Board to reconvene a process when the appropriate remedy for a violation of the TCA, in fact, is injunctive relief by way of a written order such as the relief given by this Court."

On appeal, the Wellfleet citizens' group renews its objections to the procedure by which the special permit was awarded to Omnipoint. Appellants claim that the Planning Board, subsequent to its acknowledged contravention of the TCA, should not have simply awarded the permit, but was instead required by Massachusetts zoning law to convene further public hearings in order to allow for the presentation of additional evidence and the opportunity to vote anew on the permit application. Going one step further, appellants contend that nothing in the TCA requires that Massachusetts zoning law be disregarded in instances where a town planning board's decision to deny a special zoning permit is determined to have violated the TCA. Appellants also raise a host of other issues, including the significance of Omnipoint's separate entities in the permit-award process and the permissibility of the special permit under federal environmental and historic-preservation laws.

## II. Special Permit Issuance Procedure

Appellants' principal contention is that the Wellfleet Planning Board acted outside the scope of its authority in

issuing the special permit to Omnipoint pursuant to its negotiated settlement, rather than according to the procedures prescribed by state zoning law. Their brief cites extensively to Massachusetts cases holding that a planning board's decision to grant an application for a previously denied special permit is invalid if it was not preceded by a fresh round of public notice and hearing. We review the district court's grant of summary judgment de novo, and draw factual inferences in the light most favorable to appellants. Town of Amherst v. Omnipoint Communications Enters., Inc., 173 F.3d 9, 13 (1st Cir. 1999).

We start from the uncontroverted premise that the Planning Board violated the TCA when it rejected the initial special-permit request based on the potential health risks posed by the telecommunications equipment, in spite of its acknowledgment that Omnipoint had satisfied all criteria of Wellfleet's zoning bylaws. The Board essentially admitted as much when it entered into a negotiated settlement with Omnipoint and agreed to issue, without further process, a permit it had already denied. Because the TCA does not expressly state the remedy to be ordered for violations of its substantive

provisions,[3] the district court, in ruling on the Wellfleet citizens' suit, could have either endorsed the Planning Board's direct issuance of the permit, or required that the Board hold further hearings on the matter. In ratifying the settlement agreement, the district court chose the course followed by the majority of courts in comparable situations: awarding injunctive relief in the form of an order requiring that the wrongfully withheld permit issue.[4] See, e.g., Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 497 (2d Cir. 1999) (collecting cases).

Several factors counsel the adoption of this approach. First and foremost, the TCA provision that provides a cause of action in this setting places a premium on the speedy resolution of such proceedings, directing district courts to "hear and

---

[3]The provision that confers jurisdiction on district courts in cases where wireless facilities siting decisions violate the TCA merely directs courts to "hear and decide such action[s] on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v).

[4]There is admittedly much more precedent on the issue of how a court should deal with a planning board found by the court to be in violation of the TCA, as opposed to one that has conceded its own error. But we believe that, for reasons discussed below, the rationale for permitting courts to endorse consent judgments such as the one in this case is just as strong as the rationale for permitting them to order the issuance of a permit by a planning board adjudged to have violated the TCA. See Lucas v. Planning Bd. of LaGrange, 7 F. Supp. 2d 310, 322 (S.D.N.Y. 1998) (refusing to vacate consent judgment between town planning board and telecommunications provider "simply because it is alleged that the Town was unable to, or did not, adhere precisely to its own state's procedures").

-10-

decide such action[s] on an expedited basis."   47 U.S.C. §
332(c)(7)(B)(v); see also Town of Amherst, 173 F.3d at 17 n.8
("Congress made clear [in § 332(c)(7)(B)(v)] that it expected
expeditious resolution both by the local [zoning] authorities
and by courts called upon to enforce the federal limitations
[under the TCA].").  An award of injunctive relief, rather than
a remand for further proceedings, best fulfills this statutory
goal.  Town of Oyster Bay, 166 F.3d at 497.  Second, in cases
such as this one, where a planning board knows to a relatively
high degree of certainty that its earlier denial of a special
permit is violative of the TCA, it is not unreasonable for the
board to settle with the applicant on the terms most favorable
to the town rather than to engage in litigation doomed from the
start.  As we have previously noted, such settlements are fully
consistent with the TCA's aims.  See Town of Amherst, 173 F.3d
at 17 ("[I]t is in the common interest of [planning boards] and
[telecommunications providers] to find ways to permit the siting
of towers in a way most congenial to local zoning.").  Requiring
further hearings for the sole purpose of revisiting the
underlying validity of the permit application would complicate
the settlement process and delay the ultimate resolution of the
zoning dispute.   Finally, appellants have identified no
practical benefit to sending the matter back to the Planning

-11-

Board in order to have that body hold a hearing destined to result in the issuance of the special permit. Because all relevant evidence was adduced at the initial hearing -- after all, the Planning Board unanimously found that Omnipoint's request satisfied the town zoning bylaws in all respects -- a remand to the Planning Board would serve no useful purpose. Omnipoint Corp. v. Zoning Hearing Bd., 181 F.3d 403, 410 (3d Cir. 1999). For all of these reasons, we find that the applicable law does not require that the Planning Board hold further hearings in a TCA case before issuing the special permit.[5]

Appellants claim that even if the district court correctly ordered the issuance of the special permit for the Planning Board's TCA violation, the court should have nonetheless followed Massachusetts zoning law by requiring that the permit only be issued after a new round of public notice and

_____

[5]We are aware of at least two district court decisions that have held that remand for further proceedings before local zoning officials is the more appropriate course. See PrimeCo Pers. Communications, L.P. v. Village of Fox Lake, 26 F. Supp. 2d 1052, 1066 (N.D. Ill. 1998); AT & T Wireless Servs. of Fla., Inc. v. Orange County, 982 F. Supp. 856, 860-62 (M.D. Fla. 1997). Both cases, however, are distinguishable. In PrimeCo the plaintiff sought relief via a writ of mandamus, rather than through 47 U.S.C. § 332(c)(7)(b)(v). 26 F. Supp. 2d at 1066. And in AT & T Wireless the town planning board had never made a formal determination that the application complied with local zoning bylaws. 982 F. Supp. at 861.

hearing.  But we believe that the state law that might ordinarily control such disputes is preempted in this setting, for similar reasons as those favoring injunctive relief in the first place.  Having determined that Congress meant to empower district courts to order that town planning board decisions in violation of § 332(b)(7)(C) be set aside, it would make little sense to further conclude that courts exercising that authority must do so within the confines of state zoning procedure.  Under the TCA, local zoning ordinances, such as those invoked by appellants, apply only to the extent that they do not interfere with other provisions of the Act.  Sprint Spectrum, L.P. v. Town of Easton, 982 F. Supp. 47, 50 (D. Mass. 1997).  In this case, a remand for further hearings, which appellants claim Massachusetts law requires, would accomplish nothing more than opening up for public debate the issue of whether the Planning Board should comply with the terms of the settlement agreement it had entered into (not to mention the consent decree embodying that settlement).[6]  Patterson v. Omnipoint Communications, Inc.,

---

[6]It is far from clear, moreover, that appellants' argument regarding the need for further proceedings before the Planning Board is correct even as a matter of Massachusetts law.  The Supreme Judicial Court has noted that when a zoning board of appeals is shown to have erroneously interpreted applicable zoning law, and that error leads to the wrongful denial of a special permit, "the issuance of a permit is a matter of duty, not discretion, and relief in the form of an order that a permit issue is appropriate."  Framingham Clinic, Inc. v. Zoning Bd. of

122 F. Supp. 2d 222, 228 (D. Mass. 2000); cf. Roberts v.

Southwestern Bell Mobile Sys., Inc., 709 N.E.2d 798, 806 (Mass.

1999) ("Congress certainly intended to protect providers of

[personal wireless] services from irrational or substanceless

decisions by local authorities who might bend to community

opposition to these facilities.").[7]  As such, Massachusetts law

requiring a remand for further proceedings under these

circumstances (if, indeed, such is the law) "stands as an

obstacle to the accomplishment and execution of the full

purposes and objectives of Congress," Hines v. Davidowitz, 312

U.S. 52, 67 (1941), and is consequently preempted by the TCA.

Appellants make a final equitable argument that this

method of awarding special permits, which they describe as being

"worked out by the adepts in secret away from the gaze of the

_____

Appeals,   415 N.E.2d 840, 848-49 (Mass. 1981).   Moreover,
Massachusetts state courts are authorized to issue permits
wrongfully withheld by local zoning officials "as justice and
equity require."  Mass. Gen. Laws ch. 40A, § 17.

    [7]Appellants rely heavily on Roberts to support their
argument that Massachusetts zoning procedure is not preempted in
the case at bar.  Roberts, however, is readily distinguishable,
as it merely decided that in cases where a planning board grants
a special permit in the first instance, the TCA does not preempt
de novo judicial review of the propriety of the permit award
under state or local law.  709 N.E.2d at 806-07.  That situation
is demonstrably different from the case at bar, where the
Planning Board's initial consideration of the special-permit
application followed state zoning procedure but the decision
reached was nonetheless improper as a matter of federal law.

-14-

citizens of Wellfleet to protect the mystery," is fundamentally unfair in that it effectively shuts them out of the permitting process.  We cannot agree with this characterization of the process followed, as appellants had the opportunity to intervene, and fully assert their rights, in the suit brought by Omnipoint against the Planning Board that ultimately led to the settlement agreement.  Appellants failed, however, to avail themselves of that opportunity.  We find that their belated attempt now to use Massachusetts zoning procedure to undo the settlement agreement is precluded by the TCA.[8]

### III. Other Issues

In addition to their challenge under Massachusetts zoning law, appellants raise a number of other issues related to the issuance of the special permit.  First, appellants argue that the fact that the district court awarded the permit to an entity (Omnipoint Communications) distinct from both the one that initially brought the TCA suit against the Planning Board (Omnipoint Communications, Inc.) and the one that initially

---

[8]The district court also granted summary judgment based on a finding that plaintiffs lack standing under Massachusetts zoning law.  While there may be some question about appellants' status as "aggrieved persons" within the meaning of state law, their allegations on this point are not frivolous or wholly insubstantial and appear to be sufficient to plead Article III standing.  Cablevision of Boston, Inc. v. Pub. Improvement Comm'n of Boston, 184 F.3d 88, 100 n.9 (1st Cir. 1999).

applied for the permit (Omnipoint Communications Enterprises) compromised the integrity of the permitting process. The district court, relying on an affidavit submitted by yet another Omnipoint entity (Omnipoint Communications MB Operations, LLC), accepted the factual assertion that the Omnipoint parties "are one and the same, united as subsidiaries" of Omnipoint Communications Inc. Appellants have not rebutted this finding of fact, and we find no reason to disturb it.

Second, appellants claim that Omnipoint failed to comply with the National Environmental Policy Act ("NEPA") and Section 106 of the National Historic Preservation Act ("NHPA") in obtaining the permits needed to begin work on the wireless telecommunications tower. The record, however, belies these assertions. With respect to appellants' NHPA claim, the evidence shows that Omnipoint applied to the Massachusetts State Historic Preservation Office ("SHPO") for a construction permit on a site listed on federal and state Registers of Historic Places; that the SHPO, after considering the concerns of local citizens opposed to the siting of the wireless facility in the church steeple, concluded that the proposed installation plan would have "no adverse effect" on the site, provided certain enumerated conditions were met by Omnipoint; and that the SHPO sent a written copy of this determination to the Federal

Communications Commission ("FCC"), to be forwarded to the federal Advisory Council on Historic Preservation. Despite appellants' protestations to the contrary, these were all the steps required to be taken under NHPA and the relevant regulations, see 36 C.F.R. § 800.5, and the absence of additional evidence in the record regarding further action by the FCC is not germane to the validity of Omnipoint's application.

Appellants' NEPA claim is equally unavailing. Under NEPA, wireless providers need only conduct environmental assessments of telecommunications-tower projects if the construction would have a "significant environmental effect," as that term is defined under the regulations. See 47 C.F.R. § 1.1306. In this case, the SHPO's "no-adverse-effects" determination led Omnipoint to conclude that the church steeple construction did not fall within any of the "significant environmental effect" categories under the regulations, and that an environmental assessment was therefore unnecessary.[9] In

---

[9]Only one of the "significant environmental effect" categories was even arguably implicated by the Omnipoint construction: facilities "that may affect . . . sites . . . that are listed, or . . . are eligible for listing, in the National Register of Historic Places." 47 C.F.R. § 1.1307(a)(4).

making this determination, Omnipoint fulfilled its rather modest obligations under NEPA.

Finally, appellants obliquely raise several other issues at the end of their brief, including the propriety of Omnipoint's removal of this case to federal court, the size of the bond requirement imposed by the district court in conjunction with the TRO, and the treatment of the church under the Wellfleet zoning bylaws.  These arguments are neither well-developed nor supported in the brief by case-law citations, and consequently they have been waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

**Affirmed.**  **Costs to appellees.**